200 N.J. Super. 396 (1984)
491 A.2d 770
IN THE MATTER OF THE ESTATE OF NATHANIEL B. COLE.
Superior Court of New Jersey, Chancery Division Middlesex County.
Decided April 18, 1984.
*400 Thomas Pliskin, for Estate of Nathaniel B. Cole (Giordano, Halloran and Crahay, attorneys).
Phillip Lindeman II, for Tara K. Cole (Hellring, Lindeman, Goldstein and Landau, attorneys).
John Eugene, for Bernice Cole.
Jack Borrus, for certain corporations and partnerships (Borrus, Goldin and Foley, attorneys).

OPINION
COHEN, RICHARD S., J.S.C.
This suit focuses on New Jersey's surviving spouse's elective share statute. N.J.S.A. 3B:8-1 et seq. The issues include the *401 proper date and manner of valuation of the estate and the elective share, the disposition of realized and unrealized gains and losses during administration, the right of the surviving spouse to a portion of estate income before distribution, and the assessability of the elective share for estate and inheritance taxes.

BACKGROUND
The decedent died in 1981, leaving two adult daughters, a widow whom he married in the months preceding his death, and a sizable estate. His will gave to the widow one half of his tangible personal goods, a home in Metuchen and 10% of the shares in a real estate holding company. It expressly disinherited his former wife and created a residuary trust for each of his daughters. His disposition scheme has generated a good deal of litigation among the beneficiaries.
Three suits were filed and two were eventually consolidated. One of them was filed here by a daughter of the decedent against her sister, her father's estate and four family-owned business entities. She charged mismanagement and oppression and sought dissolution of the entities. On the estate's motion, the widow was joined as a defendant because the will gave her shares in one of the entities. She was also a potential part-owner of other estate assets by reason of her statutory elective rights.
Meanwhile, an attack was made in the Probate Division on the validity of the decedent's Will and of his second marriage. The Probate Division admitted the will and upheld the marriage. Later, the widow timely filed a complaint by which she elected to take her statutory share of the estate under N.J.S.A. 3B:8-1 et seq. That matter was then consolidated into the business-entities suit that was already pending here. The latter suit was subsequently settled, leaving for decision the large number of issues raised respecting the widow's elective share.

*402 THE STATUTE
Until 1980, New Jersey remained one of the states without a statute providing an elective share for a surviving spouse. We still relied on a statutory version of the ancient rights of dower and curtesy. Because they created rights in real property only, dower and curtesy did not touch the principal forms of modern wealth and were easily defeated by the creation of corporations to hold real estate. To remedy those defects and better protect the surviving spouse, the Legislature enacted the elective share statute, originally N.J.S.A. 3A:38A-1 et seq. See Horn, Residential Real Estate Law and Practice in New Jersey, Sec. 2.2(b)(ii) (1983 Supp.) The statute was recodified without material change in N.J.S.A. 3B:8-1 et seq. (All further reference will be to the later codification.)
Much of our statute follows the Uniform Probate Code. Sections 1 and 2 say it applies to the post-May 28, 1980 estates of New Jersey domiciliaries and to the surviving spouses with whom they were cohabiting at the time of death. The spouse is given a choice. By doing nothing, she[1] may choose to take what the decedent left her when he died. However, she may elect to take one third of his "augmented estate." The augmented estate is the probate estate, less funeral and administrative expenses and provable claims plus the value of certain inter-vivos and non-probate transfers to others, plus the value of certain inter-vivos and non-probate transfers to the surviving spouse, including life insurance proceeds and pensions payable to the spouse but not to others. N.J.S.A. 3B:8-3, 6, 7. The augmented estate includes out-of-state real property to the same extent as it would be included if it were located in New Jersey. See N.J.S.A. 3B:8-2.
*403 The right of election may be waived by written agreement before or during marriage. N.J.S.A. 3B:8-10. Absent such waiver, the election is made by filing a Superior Court complaint within six months (which may be extended by the court) of the appointment of an estate personal representative. N.J.S.A. 3B:8-12. The court, after appropriate proceedings, fixes the value of the elective share and the manner of its satisfaction from the augmented estate and the persons liable for contribution. N.J.S.A. 3B:8-18 and 19. Those are persons who are already in possession of assets includible in the augmented estate. They are required to participate in the payment to the electing spouse.
It is notable that the elective share is not a fraction of the residuary estate or the probate estate but of the augmented estate, which includes other equivalents of testamentary transfers. Equally important, the burden of satisfying the spouse falls on both the probate estate and the recipients of transfers includible in the augmented estate.
It is also significant that the surviving spouse is entitled to one third of the augmented estate only to the extent that its value exceeds the value of her independent property. New Jersey's statute is unique in that regard. It works this way: once the amount of the elective share has been fixed, the court is obligated by N.J.S.A. 3B:8-15 to order the manner of its payment. N.J.S.A. 3B:8-18(a) says that the elective share shall be satisfied first by applying
[t]he value of all property ... owned by the surviving spouse in his own right at the time of the decedent's death from whatever source acquired or succeeded to by the surviving spouse as a result of decedent's death notwithstanding that the property .. . succeeded to by the surviving spouse as the result of decedent's death has been renounced by the surviving spouse.
The quoted language says two key things. The first is that the value of the survivor's own independently acquired property must be deducted from her calculated elective share. If it is greater than her share, she gets nothing more. If it is less, she gets the difference. This rule is a substantial departure made *404 by New Jersey from the Uniform Probate Code provisions that underlie almost the entire remainder of the statute. Unlike the Code's section 2-207 grant to the spouse of a share of the augmented estate without regard to her own independently acquired resources, our law grants that share only to the extent the spouse satisfies a test of need. Her need is measured by the amount by which the value of her own wealth plus death transfers of all kinds from the decedent is exceeded by the calculated value of one third of the augmented estate.[2]
The second key statement in N.J.S.A. 3B:8-18(a) is that the value of property coming to the survivor by reason of the decedent's death is deducted from her calculated share. That means, among other things, that, if the decedent leaves anything to his spouse in his will or by non-testamentary transfer taking effect on death, its value is deducted from her share. As a result, even though she has elected against the will, she must take her elective share first out of assets the decedent has chosen to give her by will or otherwise. Since she will be charged with the value of those assets, the court's N.J.S.A. 3B:8-15 order should direct their transfer to her as part of her share before touching other estate assets or persons liable for contribution.[3]
*405 Thus, the elective share is to be satisfied first out of the survivor's independent wealth and out of the decedent's bequests and non-probate transfers to her. If they are not sufficient, liability for the balance is not limited to residuary legatees or probate estate beneficiaries. The burden is required by N.J.S.A. 3B:8-18(c) to be:
equitably apportioned among the recipients of the augmented estate in proportion to the value of their interests therein.
In the absence of testamentary directions to the contrary, therefore, pre-death and non-probate transferees share the burden of satisfying the elective share ratably with specific, general and residuary legatees.

DATE OF EVALUATION OF THE ELECTIVE SHARE
The court's duty under N.J.S.A. 3B:8-15 is to "determine the amount of the elective share". That means only that, if agreement cannot be made, the court has to fix the values of the various parts of the augmented estate and the elective share so that appropriate payment or distribution can be ordered. It does not require date-of-death valuation. It does not convert the fractional elective share into a "pecuniary" share of fixed value. See In re Thompson, 90 N.J.Super, 350 (App.Div. 1966), on remand, 98 N.J.Super 36 aff'd, 104 N.J.Super 324 (App.Div. 1969). The court's further duty under N.J.S.A. 3B:8-15 *406 is to enter an order directing the "payment" or distribution of the elective share ratably from the various testamentary bequests and by contribution from recipients of parts of the augmented estate that are not in the hands of the executor. In order to do that, the court must select a method of valuation.
It has generally been held elsewhere under similar statutes that the electing spouse will share in the gains and losses in asset values occurring between death and distribution. Estate of Greenfield, 484 Pa. 141, 398 A.2d 983 (1979); Annot., 7 ALR 4th 989 (1981). The rule is sound and equitable and should be adopted in New Jersey.
There are a number of reasons. First, even though the statute speaks of the "amount" of the elective share, it deals with it as a fractional and not a pecuniary share. One who is given a fraction of the residuary estate shares in any appreciation or depreciation in the values of the assets before distribution. In re Thompson, supra; Accord, Herschberg v. Director, Div. of Taxation, 2 N.J. Tax 121, 129 (1981). The same construction should be made of like language appearing in a statute dealing with the same subject matter. The same fractional share language is employed in the statutory provisions for distribution of intestate property. N.J.S.A. 3B:5-1 et seq.
Another reason makes it unlikely the Legislature expected valuation as of the date of death. As noted, the statute requires non-probate transfers to be included in the augmented estate at date-of-death or pre-death values. If the Legislature expected the elective share or the augmented estate to be valued as of the date of death, the special provisions for date-of-death values would have been omitted as unnecessary.
The rule that the electing spouse shares in pre-distribution gains and losses is not a simple one. In the usual setting of the probate estate alone, fractional shares of the intestate estate or the residuary are not difficult to deal with. The *407 concept of the augmented estate, however, creates a unique set of problems. Included in the augmented estate are assets already in the hands of the spouse or other recipient. They may be by pre-death gift, transfer taking effect on death, or other equivalent means described in the statute. There also may be a specific bequest, which earns its own income or is non-income producing, or a pecuniary bequest, which is in a fixed amount not subject to variation with later events. None of the mentioned portions of the augmented estate should share in the gains and losses of the remainder. In the case of includible non-probate transfers, the owners are already in possession and they alone control the investment or expenditure of the assets already transferred to them. They are alone affected by gains or losses in their property. The statute expressly isolates them from gains and losses in other assets by requiring them to be valued at date of death or other earlier time. In the case of specific and pecuniary legacies, they are isolated by traditional probate law from gains and losses in values of the residuary estate. See Estate of Greenfield, supra.
The result is that the spouse should share gain and loss only in the value of undistributed probate assets that are not isolated by law from sharing gain and loss, that is to say, the residuary probate estate. Further, she should participate in gain and loss in the same ratio as the undistributed part of her share bears to the total of undistributed residuary probate assets. Whether that is more or less than one third depends on the effect of other transfers to her and others includible in the augmented estate. Interim distributions may change that ratio from time to time. Realized gains and losses should be shared according to the ratio as of the date of realization. Unrealized gains and losses should be shared according to the ratio as of the time of distribution.
In practice, the court should fix values as of the date of its decision under N.J.S.A. 3B:8-15. In doing so, it must give *408 effect to the statutory exceptions made for includible pre-death and non-probate death transfers that must be otherwise valued. It must also assign realized gains and losses from date of death values according to the ratio on the date of realization. Additionally, early-distributed probate assets should be valued as of the date of their distribution. The date-of-decision values must be made adjustable to reflect changes in values that may occur before the date of actual distribution. Therefore, the N.J.S.A. 3B:8-15 order should empower the executor to make adjustments to reflect changes in such values without the need for further application to the court.
One final matter that may be involved in the present case deserves mention. In its N.J.S.A. 3B:8-15 order, the court will have to value the spouse's independent property in order to decide what, if any, effect it will have on the size of the elective share. One question is the date of the valuation. Like other assets already in the hands of recipients on the date of death, the spouse's independent wealth should be valued as of that date. Later fluctuations in its value will thereby be removed from consideration and the spouse can better decide whether to elect within the limited time given her to do so.
A more important question is the effect, if any, on the value of the spouse's property of debt owed by the spouse and liens on her property. The statute requires calculation of the "value of all property ... owned by the surviving spouse in his own right...." The purpose is to protect the spouse only if she needs it. It is arguable that her need is better measurable by her net worth than it is by the gross value of her property. The parties have not raised the question, however, and I will assume it does not create a problem in this case. It might, however, be the subject of legislative concern.

ENTITLEMENT OF THE SPOUSE TO PRE-DISTRIBUTION INCOME
The second issue is whether the electing spouse is entitled to share in the income earned by the estate until the *409 time of distribution. The statute does not refer to the matter. Those states that have expressed views grant the electing spouse the right to income before distribution of the estate on the thesis that her rights to a fractional share of the estate vest as of the date of death. The cases are collected in Annot., 7 ALR 4th at 994-95. Upon making her election, they say, the spouse creates an immediate and vested interest in a portion of the estate, and she therefore shares to the same extent in the income generated by the estate. The rule is sound and should be followed in New Jersey. It is settled that the income produced from the assets of an intestate estate accrues to the beneficiaries according to their statutory intestate shares. Caruso v. Caruso, 102 N.J. Eq. 393 (Ch. 1928). There is no good reason why the spouse who elects against the Will should be treated differently.
Does the spouse have the right to a fractional part of all augmented estate income or to income produced by the assets she ultimately receives or to something else? Some courts deal with the question in terms of the distinction between specific legatees and general legatees. See First Union Nat. Bank of N.C. v. Melvin, 259 N.C. 255, 130 S.E.2d 387 at 393-94 (1963). Cf. In re Sheppard's Estate, 100 N.Y.S.2d 249 (Surr. 1950). Others give the surviving spouse her fractional share of the income of the entire estate. Alexandria Nat. Bank v. Thomas, 213 Va. 620, 194 S.E.2d 723, 728 (1973).
The answer is similar to the one governing fluctuations in the value of estate assets. A spouse who elects against a will elects to receive a proportional share of the estate. Her election, unlike her right to dower, does not give her an interest in any particular probate assets except those bequeathed to her by the decedent. If, as was the case here, the will bequeaths particular assets to the spouse, her election is not a renunciation of the will altogether and a rejection of those bequests. Cf. Steuer v. Hector's Tavern, 1 Misc.2d 614, 148 N.Y.S.2d 402, 406 (Sup.Ct. 1955). Rather, it is an election to take those assets *410 and to take enough more to make up one third of the augmented estate. Cf. Bankers Trust Co. of N.Y. v. Greims, 115 N.J. Eq. 102 (Ch. 1934), aff'd, 117 N.J. Eq. 397 (E. & A. 1935).
As a general rule, and with a number of exceptions, the spouse is entitled to one third of the income of the augmented estate. The first exception is that the spouse may have N.J.S.A. 3B:8-18(a) and (b) assets already in her hands and they must count against her entitlement to income whether or not they actually produce income. Other beneficiaries of pre-death and non-probate gifts from the decedent are already in possession of parts of the augmented estate. They produce income or not as the owner chooses. They may have been dissipated altogether. There may be specific and pecuniary bequests. Parts of the residuary estate may already have been distributed. The value of the assets already received, the specific and pecuniary bequests, and the distributed residuary assets must be subtracted from current values to find the ratio that will determine the amount of income to which the spouse is entitled for the period of time for which the calculation is being made. The ratio will be between the value of the spouse's undistributed participation in the residuary estate and the undistributed remainder of the residuary estate. The income to be shared is that produced by the undistributed assets.
The two other methods of handling the matter would be unsatisfactory. The fixed-ratio method, giving the spouse one third of all income until final distribution, is simple but inequitable. Holding the spouse entitled to one third of all augmented estate income, no matter in whose hands, and therefore requiring redistribution thereof, is really too difficult and would introduce other variables that are unhelpful at best.

ASSESSMENT OF ESTATE AND INHERITANCE TAXES
The final question is whether the widow's elective share is chargeable for a ratable portion of estate taxes and a ratable or individually calculated amount of inheritance taxes. The *411 elective share statute is silent on the subject. The decedent's will has a relevant provision. It says:
I order and direct my executor to pay from my residuary estate any and all inheritance, succession, transfer and estate taxes, including any interest or penalties assessed in connection therewith, imposed against my estate or the legacies, bequests and devises given, devised and bequeathed inor by this my last Will and Testament and any codicils thereto, or imposed by reason of the inclusion in my estate for tax purposes of any life insurance proceeds, gifts inter vivos, or other property.
The decedent unmistakably expressed his desire that the residuary pay every tax levied on every item of property taxable by reason of its inclusion in his estate. If the apportionment statute, N.J.S.A. 3B:24-1 et seq., were otherwise applicable, see N.J.S.A. 3B:24-4(b), his expression would be "a sufficient direction ... to rule the statute out." In re Estate of Flynn, 69 N.J. Super. 544, 558 (Ch.Div. 1961). The elective share should pass free of estate and inheritance tax unless the testamentary tax apportionment clause is somehow inapplicable to the widow's share.
The tax apportionment clause is applicable by its own terms to the elective share. At the very least, it is "other property" included in the estate for tax purposes. But, the argument runs, the widow elected against the will as a whole. She should not be permitted to tiptoe among the will's provisions, picking the ones that favor her most. The image is an appealing one but beside the point. She did not renounce the will. She elected to take its bequests and more. In addition, the tax apportionment clause is not a gift to the widow. It is a direction to the executors, which they are obligated to follow because the testator said so. Moreover, the widow's election is not something to punish her for. The Legislature created the choice because it deemed it necessary for her protection. The tax apportionment clause surely applies to the substantial bequests made to her in the will. Just as surely, its words apply to the elective share as well. But, it is argued, the elective portion comes partially out of the residuary and must share the *412 burdens of the residuary before it can be calculated and set aside.
Resolution of this issue[4] requires a look at a line of New Jersey cases dealing with taxation of the widow's portion of an estate in other contexts. The first is Case v. Roebling, 42 N.J.Super 545 (Ch.Div. 1956). It holds that assignment of the tax burden is controlled by the will, that the court must ascertain the intent of the testator, and finally that, under federal tax law that applied to that case and to this one, charging a portion of the estate tax to the widow's share that otherwise qualifies for the marital deduction will increase the total amount of tax payable by the estate since the marital deduction is reduced by the amount of the tax charged to the widow.
Next is Gesner v. Roberts, 48 N.J. 379 (1966). There the will left the widow one third of the residuary estate. It was drawn before enactment of the federal estate tax marital deduction provisions. It had no tax apportionment clause. The Supreme court could "see no profit in searching for the actual intent of the testator...." The court held that one should assume, in the absence of evidence to the contrary, that a testator intended the maximum tax advantage for the widow and the estate. It therefore ordered that the widow's share should be relieved of all tax liability. Cf. Surina v. Gilbert, 54 N.J. 68 (1969).
Finally, there is In re Estate of Marks, 129 N.J.Super 276 (Cty.Ct. 1974) aff'd, 134 N.J.Super 510 (App.Div. 1975), cert. den., 68 N.J. 280 (1975). There, the decedent was intestate. His widow took her statutory fractional share. She was relieved by the court of the burden of federal taxes on the authority of Gesner v. Roberts, supra, even though the court *413 expressed uncertainty that the decedent intended any benefit to his widow at all.
Against the uniform background of authority, there is no reason to assume in the present case that the testator's expressed intent to minimize taxes for his widow and his estate would not cover her additional statutory share. She is therefore relieved of responsibility for estate and inheritance taxes and they will be paid by the remaining portion of the residuary estate.
NOTES
[1] The decedent is "he" and the surviving spouse is "she". It is to avoid confusion of personal pronouns. It also reflects the facts of this case and, I imagine, most others.
[2] See N.J. Senate Judiciary Committee Statement accompanying L. 1979, c. 483. See also Statement of Governor Byrne on February 28, 1980 on signing the bill into law.
[3] Our statute is not as clear in this regard as it might be. The reason is that our Legislature omitted one section of the Uniform Probate Code and radically altered another. Code section 2-206(a) provides that the spouse's "election ... does not affect [her] share ... under the ... will ... unless [she] also expressly renounces ... the benefit of all or any of the provisions." Code section 2-207(a) provides that property passing to the spouse by will "and which has not been renounced ... is applied first to satisfy the elective share."

The quoted language plainly directs the court to distribute to the spouse probate assets left to her in the will unless she expressly renounces. Our statute is very different. Code section 2-206(a) was omitted and with it the spouse's option to "renounce" the will in addition to electing against it. Section 2-207(a) was changed in N.J.S.A. 3B:8-18(a). It first deals with the spouse's independent wealth in locally created language. It then goes on to require satisfaction of the elective share by applying the value of all property succeeded to by the spouse as a result of decedent's death even if she has renounced it.
By necessary implication, this language requires that bequests to the spouse are to be made as the decedent directed. If it were not so, the value of the bequests would be deducted from the elective share without any offsetting transfer to the spouse. That would defeat the central purpose of the statute. There is nothing in the legislative history to forecast such a bizarre result. Moreover, it is apparent from comparing Code sections 2-206(a) and 2-207(a) with our law that the renunciation mentioned in N.J.S.A. 3B:8-18(a) may be the 2-206(a) renunciation which disappeared when our Legislature omitted to enact that Code section. It is unnecessary to deal in this case with the effects of that possible oversight.
[4] Authorities elsewhere are divided. See Hammond v. Wheeler, 347 S.W.2d 884 (Mo.Sup.Ct. 1961) and In re Glover's Estate, 45 Haw. 569, 371 P.2d 361 (1962); Alexandria Nat. Bank v. Thomas, 213 Va. 620, 194 S.E.2d 723 (1973).