ESTATE OF FIORE AGNELLO, DECEASED, JOHN AGNELLO, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12201–92.     Filed November 10, 1994.

*Eugene Lyle Stoler,* for petitioner.
*Richard E. Buchbinder,* for respondent.

OPINION

RAUM, *Judge*: The Commissioner determined a Federal estate tax deficiency of $96,383.84 (less $17,130.52 additional credit for State death taxes, if substantiated). After concessions, the only matter in controversy relates to payments made by petitioner to the decedent's widow in settlement of her claim for her statutory elective share under New Jersey law. At issue is whether petitioner is entitled to a marital deduction under section 2056[1] to the extent that such payments reflected appreciation in the value of the estate assets that occurred subsequent to the death of the decedent. The facts have been stipulated.

Petitioner is the Estate of Fiore Agnello, deceased. The decedent, Fiore Agnello, died on January 23, 1988, a resident of New Jersey. His will was probated and his estate was administered in a New Jersey court. Acting on petitioner's behalf in connection with this case is the decedent's son, John Agnello (also John L. Agnello), who is also executor of his estate. At the time of filing the petition, petitioner's legal address was c/o John Agnello, c/o Quality House Companies, 1455 Cromwell Avenue, Bronx, New York 10452. The decedent was survived by his second wife, Rose Marie Agnello (Mrs. Agnello), who was much younger than he. His first marriage, to Marie Colombo Agnello, ended in divorce in November 1970.

The decedent's last will and testament was admitted to probate on May 6, 1988. Sometime thereafter his son John Agnello was appointed executor. The decedent's will, after providing for funeral expenses, medical expenses incurred in his last illness, and other debts, bequeathed his stock interests in three 100-percent owned corporations, Quality House Building Cleaning Corp. (QH-Building Cleaning), Quality House Interior Services, Inc. (QH-Interior Services), and Quality House Drapery and Upholstery Corp. (QH-Drapery), to the children of his first marriage in the following percentages: 55 percent to John L. Agnello, 40 percent to

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the date of decedent's death.

Robert D. Agnello, and 5 percent to Lydia A. Agnello. The decedent had no other children. The residue of the decedent's estate was left to his surviving spouse, Rose Marie Agnello. However, payment of the decedent's funeral expenses, medical expenses, debts, and specific bequests would have consumed his entire probate estate, and left no residue. Thus, despite her status as the decedent's surviving spouse, Mrs. Agnello would have received only nonprobate property consisting of decedent's half-interest in their cooperative apartment worth $108,500 and insurance proceeds of $38,889.

Although John Agnello "never got along well" with his stepmother,[2] Rose Marie Agnello, he nevertheless made certain payments to her after the decedent's death, because the decedent had requested that he "take care of" her. Such payments consisted of $65,218 paid "prior to December 28, 1988", plus an additional $3,000 paid on January 1, 1989, and were subsequently described as "advances" in the settlement of elective share discussed below.

Mrs. Agnello's elective share of the decedent's "augmented estate", determined under New Jersey law, N.J. Stat. Ann. sec. 3B:8-1 to 3B:8-4 (West 1983),[3] was greater than the property to which she was entitled under the decedent's will plus the nonprobate property she received. She timely and properly invoked her legal right of election under New Jersey law against the estate. She filed a complaint against the estate in October 1988 with the Superior Court of New Jersey, Law Division, Bergen County, in which she sought to obtain her statutory elective share of her deceased husband's "augmented estate".[4] In December 1988, the estate filed an answer to the complaint. In the prayer for relief, the estate

---

[2] Indeed, petitioner asserts that the relationship was "acrimonious".

[3] N.J. Stat. Ann. sec. 3B:8-1 (West 1983) provides in pertinent part that "If a married person dies domiciled in this State, * * * the surviving spouse has a right of election to take an elective share of one-third of the augmented estate". The meaning of the term "augmented estate" is in turn set forth in N.J. Stat. Ann. sec. 3B:8-3 (West 1983), which states that "The 'augmented estate' means the estate reduced by funeral and administration expenses, and enforceable claims, to which is added" the value of certain other "transfers" made during the course of the decedent's marriage to persons other than the surviving spouse. The "transfers" described in sec. 3B:8-3 include transfers involving retained life interests, transfers subject to a power of revocation, transfers resulting in joint ownership of the property, and transfers made within 2 years of the decedent's death. Such transfers are valued "as of the decedent's death". N.J. Stat. Ann. sec. 3B:8-4 (West 1983).

[4] The term "augmented estate" is confusing, and is not necessarily to be taken literally. As explained *supra* note 3, it is a term of art in New Jersey law.

asked that the court fix the value of the surviving spouse's elective share, as the plaintiff (Mrs. Agnello) had requested in her complaint.

After the plaintiff embarked upon discovery with respect to the estate's assets, the case was settled by the litigants in December 1988. Their written agreement, dated December 28, 1988, was captioned "AGREEMENT IN SETTLEMENT OF THE ELECTIVE SHARE CLAIM OF ROSE MARIE AGNELLO AGAINST THE ESTATE OF FIORE AGNELLO". The settlement agreement documented the following understandings (summarized as items 1 through 6 below) reached between Mrs. Agnello and John Agnello, as executor for the estate:

(1) Mrs. Agnello was to retain her interests in all of the nonprobate assets received by her by operation of law, i.e., the decedent's interest in the cooperative apartment and the life insurance proceeds.

(2) Mrs. Agnello was to retain without obligation of repayment the $65,218, which the estate had already paid to her, and which was to be deemed as received by her as part of her elective share claim.

(3) The estate would transfer to Mrs. Agnello title to the 1988 Oldsmobile that she was driving.

(4) Mrs. Agnello was to receive an additional $400,000 from the estate at the closing date of the agreement.

(5) The estate was to transfer its entire interest in a corporation known as the Imperial Card Shop, Inc., to Mrs. Agnello.

(6) In return for all of the above, Mrs. Agnello agreed to dismiss her lawsuit against the estate and to renounce and disclaim any interest in the estate (other than those described above) which she might otherwise have.

Both the estate and Mrs. Agnello were represented by counsel in the lawsuit and in the settlement, and there is no dispute that the agreement was negotiated "at arm's length". However, petitioner is unable to document computations of any amounts used or asserted in the negotiation of the settlement agreement. The parties have stipulated as follows with respect to petitioner's motives for settling:

The executor was anxious that the litigation be concluded because there were mounting legal costs. At the time of the settlement in December, 1988, the value of the decedent's business interests had not been finally determined by the parties. The negotiations became an attempt to find an

agreeable dollar amount, rather than expose the estate to the hazards and expense of litigation.

\* \* \* \* \* \* \*

The decedent's children, particularly John and Robert Agnello (who were bequeathed 95% of the corporations) did not want the surviving spouse to own any part of the close corporations.

The parties also stipulated that the settlement of Mrs. Agnello's lawsuit "was inclusive of any and all rights of the surviving spouse's to share in any post-death appreciation of assets included as part of the augmented estate." The estate paid Mrs. Agnello the sum of $400,000 as the final payment due to her under the settlement agreement.

On the Estate Tax Return (Form 706), the estate claimed an estate tax marital deduction of $629,107.[5] The deduction was calculated as the sum of the following amounts:

| | |
|---|---:|
| 1. Advances by the estate | $68,218 |
| 2. 1988 Oldsmobile automobile—value | 14,000 |
| 3. Cash payment | 400,000 |
| 4. Interest in Imperial Card Shop, Inc.—no value | [1]-0- |
| 5. Cooperative apartment—decedent's interest | 108,000 |
| 6. Proceeds of life insurance policies | 38,889 |
| Total | 629,107 |

[1] A footnote in the stipulation of facts filed by the parties herein explained this item as follows:

Decedent had paid about $100,000 to set up Leonard Caputo (Rose Marie Agnello's son from a prior marriage) in a card shop business in 1986. The 1986 and 1987 corporate returns showed losses. Decedent only had nominal ownership because of the mortgage liability. Pursuant to the agreement in settlement of elective share, this stock was transferred to Mrs. Agnello and the estate was to be held harmless from any liability on a $90,000 P.M. mortgage which decedent had cosigned with Mr. Caputo.

The parties herein have stipulated that the surviving spouse received the items listed in the foregoing schedule.

In the deficiency notice, the estate's marital deduction was decreased by $143,546 to $485,561. The $485,561 marital

[5] On the estate tax return, the total reflected and claimed as a marital deduction was actually $629,117. However, the figures listed on the estate's Schedule M (i.e., the form for the marital deduction computation) added up to $629,107 not $629,117. It is clear from the record that the $10 discrepancy is attributable to an arithmetic error in the estate's computation of the marital deduction. Furthermore, petitioner argues on brief for the $629,107 amount rather than the $629,117 amount initially reflected on the estate tax return.

deduction allowed in the deficiency notice represented Mrs. Agnello's one-third share of the decedent's "augmented estate" under New Jersey law, which was computed as equal to all of the decedent's assets at the date of his death, using the *date of death values* shown on the estate tax return,[6] as adjusted in the notice of deficiency, and reduced by debts and expenses. The parties agree that the Commissioner's calculation must be reduced by $11,270 in order to reflect the parties' stipulation as to certain other settled issues. The net amount in issue as stipulated by the parties is $154,546, based on a lower "augmented estate" that takes into account a stipulation as to other settled issues.[7]

All issues resulting from determinations in the deficiency notice, other than the issue relating to the allowable marital deduction, have been resolved pursuant to the stipulation of settled issues filed by the parties. The sole issue remaining for decision therefore concerns the proper amount of the estate's marital deduction for amounts paid to the decedent's surviving spouse in settlement of her elective share under New Jersey law.

The statutory authority for the estate tax marital deduction[8] is set forth in section 2056(a), which provides generally that the taxable value of an estate is to be "determined by deducting from the value of the gross estate an amount equal to the value of any interest in property * * * passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." Section 2031(a) in turn provides that the value of the gross estate shall be determined by including "the value at the time of his death" of all the decedent's property. Thus, under the statutory scheme of section 2056, the sine qua non for deductibility of testamentary spousal transfers is that the value of transferred property be included in the decedent's gross estate, and that such value be determined as of the date of death. These statutory limitations are reflected

---

[6] The return explicitly indicated by an X in a "No" box that the estate did not elect to have the assets valued as of the alternate valuation date.

[7] Our own computation on the basis of the figures presented to us results in a somewhat larger amount in issue, but we leave it to the parties to agree upon the appropriate amount in their joint computation under Rule 155.

[8] All references in this opinion to the phrase "marital deduction" are to the Federal estate tax marital deduction, as provided for in sec. 2056. A marital deduction is also allowed for Federal gift tax purposes. However, this case involves no issues pertaining to the gift tax.

in the Treasury regulations, which, however, restate the limitations in a more complex or convoluted manner.

Section 20.2056(a)–1(a), Estate Tax Regs., permits a deduction under section 2056 from the gross estate for the value of any property interest passing from the decedent to his surviving spouse, if the interest is a "deductible interest" as defined in section 20.2056(a)–2, Estate Tax Regs.[9] Section 20.2056(a)–2(b), Estate Tax Regs., in turn provides that an interest passing to a decedent's spouse is a "deductible interest" if it does not fall within certain enumerated categories of "nondeductible interests", the first of which is for "(1) Any property interest * * * to the extent it is not included in the decedent's gross estate." And with respect to the valuation of such property interest, section 20.2056(b)–4(a), Estate Tax Regs., states in pertinent part that "The value, for the purpose of the marital deduction, of any deductible interest which passed from the decedent to his surviving spouse is to be determined *as of the date of the decedent's death*".[10] (Emphasis added.) See also *Jackson v. United States,* 376 U.S. 503, 508 (1964); *Provident Natl. Bank v. United States,* 581 F.2d 1081, 1086 (3d Cir. 1978).

Accordingly, the marital deduction here must be based upon value of the property involved as of the date of the decedent's death. But, as already noted, the parties have stipulated that the settlement of Mrs. Agnello's lawsuit included any rights she may have had "to share in * * * post-death appreciation of assets" that formed "part of the [decedent's] augmented estate." Thus, Mrs. Agnello's settlement was not calculated simply by reference to the decedent's estate, as it existed on the date of his death. It instead *also* included her claimed share—presumably the one-third share to which she would have been entitled under New Jersey law—of the additional increments in the value of estate assets that accrued between the date of the decedent's death and the settlement date. And it was this larger amount, i.e., her share under the settlement of the decedent's date of death estate as increased for such additional incre-

---

[9] The regulation also sets forth additional requirements not relevant here.

[10] Sec. 20.2056(b)–4(a), Estate Tax Regs., does provide for an exception "if the executor elects the alternate valuation method under section 2032", in which case the date of death value is subject to adjustment, as provided in sec. 20.2032–1(a)(3), Estate Tax Regs. However, the record discloses that no such election was ever made here. See *supra* note 7.

ments in value, which served as the basis for the marital deduction in the estate tax return. The marital deduction claimed on the return therefore necessarily exceeded her elective share of the sum of date of death values of properties included in the decedent's estate. As a result, it did not square with the requirement that "The value, for the purpose of the marital deduction, of any deductible interest * * * passed from the decedent to his [or her] surviving spouse * * * be determined as of the date of the decedent's death". Sec. 20.2056(b)–4(a), Estate Tax Regs. The Commissioner therefore appropriately disallowed the portion of the marital deduction attributable to postdeath increases in the value of the estate assets. The Commissioner determined such portion as being equal to the difference between the amount claimed by petitioner and the surviving spouse's one-third elective share of the decedent's "augmented estate", as determined under New Jersey law, using date of death values for the estate assets.

The burden was upon petitioner to show error in the Commissioner's determination. Yet the record is devoid of any facts even tending to establish that the amount of deduction disallowed by the Commissioner included anything other than postdeath enhancement of the decedent's property passing to his widow. It is quite true that what Mrs. Agnello actually received was arrived at through an arm's-length settlement agreement. But it must be assumed, unless petitioner proves otherwise, that the base upon which the arm's-length negotiations were conducted included postdeath accretions to the estate. Indeed, the record affirmatively discloses in paragraph 28 of the stipulation of the parties that "The litigants' settlement of the election action was inclusive of any and all rights of the surviving spouse's [sic] to share in any post-death appreciation of assets included as part of the augmented estate." Petitioner has failed to show that what was given to Mrs. Agnello did not include a negotiated portion of the enhancement of the estate. Certainly, the record is utterly without evidence to establish that the amount of such negotiated portion was any less than the amount by which the Commissioner reduced the marital deduction. Plainly, petitioner has failed to show that the Commissioner's determination was in error in this respect. The burden of proof is critical here, and in this connection we hardly

need to point to *Welch v. Helvering,* 290 U.S. 111 (1933), often unnecessarily cited for the proposition that the burden rests upon petitioner. On this record, we hold that the Commissioner's disallowance must be sustained.

Petitioner has failed on brief to address any of the concerns dealt with above. Instead it has made certain arguments that may be dismissed without extended comment. Thus, it devoted part of its opening brief to showing that the settlement negotiations were conducted at arm's length. In this connection petitioner is beating a dead horse. There is no dispute about the arm's-length character of the settlement, and the conclusions that we reach proceed on that basis.

Petitioner has also relied upon opinions in two cases approving the marital deduction where payments to the widow were made pursuant to a settlement agreement. *Estate of Hubert v. Commissioner,* 101 T.C. 314 (1993); *Waldrup v. United States,* 499 F. Supp. 820 (N.D. Miss. 1980). Neither of those opinions discussed the statutory and regulatory provisions here at issue, which, as already noted, limit the marital deduction to the taxable value included in the decedent's gross estate, measured as of the date of the decedent's death.[11] To the extent relevant here, the regulation considered in each of those cases was section 20.2056(e)–2(d)(2), Estate Tax Regs., which is applicable in determining whether a property interest surrendered to the decedent's surviving spouse in respect of a controversy involving the decedent's will or a transfer under the will is to be regarded as having "passed from the decedent to his surviving spouse" for purposes of section 2056. Regardless of the holdings in those cases as to the availability of the marital deduction in a settlement context, part of the settlement in this case included increases in the value of estate assets which occurred *after* the decedent's death, and which were consequently not included in the decedent's Federal gross estate. That part of the settlement was clearly not eligible for the marital deduction, because under section 2056(a), the marital deduction is available "only to the extent that such interest

---

[11] Moreover, we note that in *Estate of Hubert,* the parties agreed that "the amounts of the marital and charitable deductions should be based on the date-of-death value of the residue" and that the Court specifically stated that "The value of the corpus at * * * death is the value used in determining the deductions." 101 T.C. at 332, 333.

[i.e., the interest transferred to the surviving spouse] is included in determining the value of the gross estate." And, absent special circumstances (section 2032) not present here, section 2031 provides that the value of the decedent's gross estate is to be determined as of "the time of his death".

Petitioner argues in the alternative that if the Court finds that it is not bound by the "arm's-length" negotiated settlement in determining the value of petitioner's marital deduction, "the estate should [nevertheless] be allowed a [marital] deduction for the value [that] the widow would have received had she proceeded in her litigation and * * * [been] awarded the widow's share under New Jersey law." (Pet. Opening Brief at 13). Petitioner cites a decision by the Superior Court of New Jersey, *In re Estate of Cole,* 200 N.J. Super. 396, 491 A.2d 770 (1984), for the proposition that a surviving spouse's elective share is to be valued as of the date of distribution rather than as of the date of the decedent's death. Although *Estate of Cole* did so hold, it nevertheless is wholly irrelevant here for a number of reasons, only one of which need be mentioned as a complete answer to this point.

It has long been settled that while State law governs as to the rights created in property, Federal law is determinative as to how such rights may be taxed, regardless of the labels that may be attached to such rights by State law. *Morgan v. Commissioner,* 309 U.S. 78, 80–81 (1940). Accordingly, even assuming that *Estate of Cole* correctly interprets New Jersey law,[12] it is irrelevant here because under the Internal Revenue Code, postdeath appreciation in the estate's assets may not be included in the measure of the marital deduction.

On this record, we find no error in the Commissioner's determination as to the amount of the marital deduction

---

[12] We note that *In re Estate of Cole,* 200 N.J. Super. 396, 491 A.2d 770 (1984), is a decision of a lower court of New Jersey, and although "proper regard" should be given to it, only a decision by the highest court of that State may be authoritatively relied upon as reflecting the law of New Jersey. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 463–465 (1967).

allowable to petitioner. To take into account various concessions of the parties,

*Decision will be entered under Rule 155.*