746 A.2d 1090

IN THE MATTER OF THE ESTATE OF WILMA L. BILSE.

Superior Court of New Jersey
Chancery Division
Union County
Probate Part

March 8, 1999.

*Matthew DeMaria,* for Plaintiff (*Friedman, Sherwin & Scarola,* attorneys; *Mark J. Sherwin,* on the briefs).

*Derrick A. Scenna,* for Defendants (*Reussille, Mausner, Carotenuto, Barger & Steel,* attorneys).

*Donald J. Pappa,* Esq., for the Estate of Wilma L. Bilse.

BOYLE, J.S.C.

Before the court is the issue, never decided in this state, of whether the heirs of a surviving spouse are entitled to that person's statutory elective share where the spouse applied for the share, but died prior to the determination of that elective share. The court holds that the heirs of that "surviving" spouse may pursue that share only to the extent that it may have been required for support of the "survivor" for the period between the death of the spouse and the death of the survivor.

The facts and procedural history of this case are as follows:

Wilma Bilse died testate on June 30, 1998. Her will dated March 5, 1998, which was admitted to probate on July 14, 1998, appointed Donald J. Pappa, Esq. as her executor. This will made no provision for Wilma's husband, Leo Bilse. On November 30, 1998 Leo filed an Order to Show Cause and Verified Complaint seeking his statutory elective share pursuant to *N.J.S.A.* 3B:8–15. Within his complaint, Leo alleged that he was entitled to his elective share as he and Wilma resided together as husband and wife. In addition, the complaint alleged that there was no pending action for divorce or nullification of the marriage.

Wilma's will bequeathed $50,000 to four of her great-grandchildren, Lauren Carlo, Anthony Joseph Carlo, Daniel Michael Carlo

and Ashley Carlo, and the residuary of her estate to her grand-children, Anthony F. Carlo, IV and Daniel Carlo, all defendants in this matter. On the return date of the Order to Show Cause counsel for defendants argued that because Leo had died on December 11, 1998 his heirs were not entitled to pursue Leo's elective share. Plaintiff[1] objected and argued that the right to the share was vested. At that time this court determined that a threshold question existed as to whether Leo's heirs could pursue the elected share subsequent to Leo's death. The court ordered briefs to be filed and served on that issue.

Defendants argue that New Jersey's elective share statute, unlike other states' statutes, is need-based. Defendants contend that this requirement of support or need no longer exists due to Leo's death. In opposition, plaintiff contends that other jurisdictions have permitted a share to be pursued following the death of the surviving spouse as long as the share had been properly elected by the survivor.

■ The court finds, as stated above, that where the surviving spouse dies before an elected share is determined, the heirs of that "survivor" may pursue the elective share only to the extent that it may have been needed for support during the period between his spouse's death and his death. This holding is based upon the fact that the elective share statute is primarily need-based as expressed within the statute, the relevant case law, and the legislative record for the elective share statutory scheme.

The elective share statute does not specifically address whether heirs of a surviving spouse are entitled to that spouse's elected share, but a reading of the individual provisions reveal that the statute is need-based. *Aragon v. Estate of Snyder*, 314 *N.J.Super.* 635, 640, 715 *A.*2d 1045 (Ch.Div.1998); *In re Estate of Cole*, 200 *N.J.Super.* 396, 402–04, 491 *A.*2d 770 (Ch.Div.1984). As stated in *Aragon*, "statutes are to be read as a whole and consideration is

---

[1] On February 4, 1999 an order was signed permitting substitution of Plaintiff Leo Bilse by Robert J. Bilse as the Executor of the estate.

to be given to all related sections" as "[c]ourts seek to avoid a construction which will render part of a statute meaningless." *Aragon, supra,* 314 *N.J.Super.* at 640, 715 *A.*2d 1045. *N.J.S.A.* 3B:8–11 (Who may exercise the right to take an elective share) states the following:

> The right of election to take an elective share by a surviving spouse may be exercised only during his lifetime. In the case of a surviving spouse for whom the court has appointed a guardian to manage his estate, the right of election may be exercised only by order of the court making the appointment after finding that the election is necessary to provide adequate support of the surviving spouse during his probable life expectancy.

This statute indicates, first, that an election may not be made after death. The requirement of election during the survivor's life and not after death reveals that the primary purpose of the statute may not be simply to provide an inheritance to the survivor's heirs. Second, although this case does not deal with guardianship of a surviving spouse, the statute does provide that such a guardian may elect a share only if it is shown to be necessary for "adequate support" and only for the probable life expectancy of a ward. By placing the restrictions of "adequate support" and "probable life expectancy" on the share, the statute indicates it is need-based, and again, is not intended to merely provide a ward with an inheritance.

The intent to allow for an elective share only to the extent it is needed for support is even more evident when considering the combined effect of other provisions of the elective share statute. An electing spouse may take one-third of an augmented estate, which is the probate estate minus funeral expenses, administrative expenses, provable claims, but includes certain inter vivos and non probate transfers to others and the surviving spouse, and life insurance proceeds to the surviving spouse, but not to others. *N.J.S.A.* 3B:8–3, 3B:8–6, 3B:8–7; *Cole, supra,* 200 *N.J.Super.* at 402, 491 *A.*2d 770. Thus, any monies the spouse received from life insurance policies or any transfers made prior to death are added into the "augmented estate," a further indication that the statute's purpose is not simply to provide an inheritance. However, the surviving spouse is not simply entitled to one-third of this estate.

*N.J.S.A.* 3B:8–18(a) has the effect of permitting a spouse to take one third of an augmented **estate only to the extent that its value is greater than the survivor's independent property.** *N.J.S.A.* 3B:18–8(a); *Aragon, supra,* 314 *N.J.Super.* at 640, 715 *A.*2d 1045; *In re Del Guercio Estate,* 206 *N.J.Super.* 159, 501 *A.*2d 1072 (Law Div.1985). New Jersey's statute is different from other states in this requirement. *Cole, supra,* 200 *N.J.Super.* at 403, 491 *A.*2d 770.

Once an elective share is fixed, as discussed above, payment of the share should be made pursuant to *N.J.S.A.* 3B:8–15. *Cole, supra,* 200 *N.J.Super.* at 403, 491 *A.*2d 770. Satisfaction of the share is governed by *N.J.S.A.* 3B:8–18 and subsection (a) states that the amount owed to the survivor should be first paid by utilizing:

The value of all property ... **owned by the surviving spouse** in his own right at the time of the decedent's death from whatever source acquired, or succeeded to by the surviving spouse as a result of decedent's death notwithstanding that property ... succeeded to by the surviving spouse as the result of decedent's death has been renounced by the surviving spouse.

[*Ibid.* (Emphasis added).]

This statute requires that the survivor's own independently acquired property be utilized to satisfy his elective share. *Cole, supra,* 200 *N.J.Super.* at 403, 491 *A.*2d 770. "If it is greater than [his] share, [he] gets nothing more ... [i]f it is less, she gets the difference." *Ibid.* Also deducted from his share, pursuant to *N.J.S.A.* 3B:8–18(a), is the value of the property that the survivor receives due to the death of the decedent. *Cole, supra,* 200 *N.J.Super.* at 404, 491 *A.*2d 770. The intent and effect of these provisions, as construed by other New Jersey courts, is to grant a share only to the extent that it is required for support. *Ibid.*

This need-based scheme, as evidenced by the statute, differs significantly from the model code, the Uniform Probate Code ("UPC"), from which the elective share statute is derived. *Aragon, supra,* 314 *N.J.Super.* at 638, 715 *A.*2d 1045; *Cole, supra,* 200 *N.J.Super.* at 402, 491 *A.*2d 770. While UPC § 2–207, on which *N.J.S.A.* 3B:8–18(a) is based, grants an elective share without

regard to the independently acquired resources of the survivor, the effect of New Jersey's statute is to provide a share only to the extent the surviving spouse's assets do not fulfill the share. *Aragon, supra,* 314 *N.J.Super.* at 640, 715 *A.*2d 1045; *Cole, supra,* 200 *N.J.Super.* at 403–04, 491 *A.*2d 770.

While other states have allowed representatives of the surviving spouse to pursue an elected share, the statutory scheme of those states, also based on the UPC, is not "imbued with need" as are New Jersey's provisions. Plaintiff contends that the court in *Smail v. Hutchins,* 491 *So.*2d 301 (Fla.Dist.Ct.App.1986), permitted the personal representative of a deceased "surviving" spouse to pursue her elective share where she died after she filed notice to make election, but before the actual petition was filed and before the share was determined, based on her vested right. *Ibid.* (citing *In re Estate of Hiley,* 262 *So.*2d 476 (Fla.Dist.Ct.App. 1972)). The court in that case permitted the personal representative to pursue the elective share as the "survivor" had done all she was required to do by filing notice of her election. *Id.* at 303. The defendant in *Smail* argued that the plaintiff was not entitled to the share as it would only benefit the heirs of the "survivor" rather than provide support for the "survivor." The court ruled that simply because the heirs and not the "survivor" would benefit would not work to bar a share, but what was key was that the "survivor" had fulfilled the procedural or mechanical requirements of electing the share. *Ibid.* As the Court in *Smail* recognized, that holding was contrary to the holding of *In re Estate of Anderson,* 394 *So.*2d 1146 (Fla.Dist.Ct.App.1981), wherein the court found that the elective share in Florida is for the express purpose of caring for surviving spouse and not to augment the estate for the benefit of the heirs.

As indicated above, Florida's elective share statute differs markedly from New Jersey's code. For example, where *N.J.S.A.* 3B:8–18(a) provides that an elective share must first be paid from the surviving spouse's assets, Florida's comparable statutory provision, *F.S.A.* § 732.209 (elective share; from what assets payable),

contains no such similar requirement. Also, while *N.J.S.A.* 3B:8–11 (who may exercise the right to take an elective share) provides that a guardian may seek his ward's elective share only if it is necessary to provide adequate support and only for the probable life expectancy, *F.S.A.* § 732.210 (Right of election; by whom exercisable) states that a guardian of the property may petition for his ward's elective share and the court "shall determine the election as best interests of the surviving spouse require." While perhaps this comparable provision could be construed as evidencing a "need" requirement as the court should examine the "best interests" of the ward in Florida, this statute does not contain the same outright requirement of need as expressed in *N.J.S.A.* 3B:8–11.

The court in *Trezak v. Jierski*, 443 *Pa.Super.* 276, 661 *A.*2d 412 (1995) addressed an issue similar to that in *Smail*, namely whether a deceased "surviving" spouse's heirs may pursue his elected but undetermined share. That court reviewed 20 *Pa.C.S.* § 2206 (right of election personal to surviving spouse) which is similar to *N.J.S.A.* 3B:8–11 (who may exercise the right to take an elective share). Both statutes indicate that the "right of election" may be exercised only by the survivor during his or her lifetime. The Pennsylvania court found that since the survivor had properly elected the share, the action could be pursued by the "survivor's" heirs. *Id.* at 414 (citations omitted). Although New Jersey's statute is similar regarding when election can be taken, the same provision also states that a guardian can elect a share only if it is necessary for support, as discussed previously. *N.J.S.A.* 3B:8–11. Further, New Jersey's statute evidences a requirement of need as expressed in other provisions, whereas Pennsylvania's does not. *See* 20 *Pa.C.S.A.* chpt. 22.

Thus, while courts of other states have construed their elective share statutes to find that representatives of a deceased "surviving" spouse may pursue a statutory share once it is elected, those states' statutes do not require an outright need for support. While decisions of other states certainly may be helpful in deter-

mining the rationale for a certain decision, our courts must be guided first by our legislation and its intent as expressed in the statute and its history.

As discussed above, New Jersey's elective share statute does not specifically address the question of whether heirs may pursue an elected share and neither does the legislative history specifically address this question. However, the legislative commentary does provide some insight into the purpose behind the elective share statute. As discussed in *Aragon, supra,* 314 *N.J.Super.* at 637, 715 *A.*2d 1045, and *Cole, supra,* 200 *N.J.Super.* at 402, 491 *A.*2d 770, prior to the elective share statute's enactment, New Jersey relied on rights of dower and curtsey which were easily overcome resulting in disinheritance to the survivor. The published Statement to the Assembly regarding New Jersey's elective share statute reveals that the statute was intended to provide for an elective share of the decedent's augmented estate **"where necessary** for the survivor's support and maintenance." State Judiciary Comm., Statement to the Assembly, No. 18, at 1 (Nov. 19, 1979). (Emphasis added). The statement further indicates:

Under existing New Jersey law, a decedent may deplete his entire estate during lifetime by gift or otherwise, so that at the time of death his assets or estate have been either completely or considerably depreciated. The effect is to disinherit the surviving spouse to the extent of such depreciation and can result in complete disinheritance. **The object of this bill is to prohibit disinheritance of a surviving spouse who needs continuous support.**

[*Ibid.* (Emphasis added) ].

In addition, the purpose of the "augmented" estate, as expressed in the Judiciary Committee Statement to the Assembly, was to prevent the decedent from transferring property to defeat the survivor's rights and also to prevent the survivor from electing a share when he or she "has already received a fair share of the decedent's wealth during his lifetime or at death from other assets." *Id.* at 2.

Based on the legislative comments, the statute is not designed simply to protect a surviving spouse from disinheritance. If the statute were intended only to protect a survivor from disinheritance, several of the provisions of this code would not be neces-

sary. First, the provision in *N.J.S.A.* 3B:8–11 requiring a guardian to demonstrate his ward's need for support would not be relevant. Second, the provision incorporated into *N.J.S.A.* 3B:8–18(a), requiring the share to be satisfied by first applying the survivor's assets, would not be necessary. These provisions, combined with the expressed intent of the legislature to "prohibit disinheritance of a surviving spouse who needs continuous support," indicate that the elective share is to provide monies or assets to those who are in need of "continuous support" and not simply to provide an inheritance.

The relevant question, therefore, becomes whether Leo is or was truly in need of support. It would appear that upon the death of the surviving spouse, the need for support ends and therefore the right to an elective share, based upon need, also terminates. However, a fair reading of the statute and legislative history would indicate that the legislature did not intend to eradicate Leo's right to perhaps a portion of a share based on "need" after the death of Wilma but before his death. For example, a spouse with a large estate may have died leaving his wife nothing. That survivor may have elected her share and incurred debts to support herself due to a lack of funds, but died before the share was determined. Following her death, there may be no further "need" for support. However, a court of equity should not allow a fortuitous event such as the death of the survivor prior to the determination of the share to eliminate the right to seek monies he or she would have been entitled to for support during the period between his spouse's death and his death. Therefore, this Court finds that because the statute's purpose is to provide for support, the representative of a now deceased "surviving" spouse who died after properly electing his share but before its determination may only seek the elective share to the extent that monies were necessary for support and maintenance for the period between the death of the husband and wife.

Neither the statute nor the legislative history define "need" but the legislative history indicates that need should be equated to

amounts for "support and maintenance" or "continuous support." *See* State Judiciary Comm., Statement to the Assembly, No. 18, at 1 (Nov. 19, 1979). A "need" may, but not necessarily, be in the form of a debt if that debt was incurred for items of support or maintenance. The court notes, however, that only the personal representative, and not the creditors of the survivor's estate, may pursue an elective share and that right exists here only because Leo himself made that election prior to death. *Aragon, supra,* 314 *N.J.Super.* at 642, 715 *A.*2d 1045 (finding that right to take an elective share may be exercised only by the "surviving spouse" and not by a surviving spouse's creditor).

Plaintiff argues that Leo's right to pursue the entire share was vested as discussed in the *Smail* and *Trezak* cases. Plaintiff contends that Leo satisfied the mechanics of seeking his elective share by petitioning the Court and also argues that the right to pursue the share vested in him by virtue of his filing of a Complaint and Order to Show Cause. However, this right is only vested to the extent that he needs or requires the funds for support prior to his death, as would be determined by the combined elective share statutes. In the case at hand, any need beyond his death is extinguished due to Leo's death. Plaintiff also contends that even though the funds from an elective share inheritance would go to Leo's heirs, that fact is not determinative, as held in *Smail, supra,* 491 *So.*2d at 303, and that his entitlement to a share hinges instead on his actual filing for the share. When considering the intent behind New Jersey's elective share statute, inheritance by the heirs and not by the survivor certainly *is* relevant according to New Jersey's statutory scheme as, again, the statute's purpose is to provide necessary support, not simply an inheritance to heirs.

While Plaintiff also argues that prohibiting him from pursuing the share may yield an unfair result, such as someone who elects the share, but dies on the courthouse steps on his way to litigate the matter, the statute supports such a result. Upon death, need for support may be extinguished, as may be the right to an

elective share. While this result may appear to be unfair, it is, unfortunately, the result of the such need-based legislation. Plaintiff maintains that Leo did all that was necessary to elect his share. It is evident that although Leo elected to take his statutory elective share, his untimely demise eliminated any further need for support.[2]

While the use of equitable remedies may be applied in some cases where seemingly unfair outcomes result from statutory application, the court does not find those remedies appropriate here. For example, a constructive trust was utilized by the Court in *Carr v. Carr*, 120 *N.J.* 336, 576 *A.*2d 872 (1990), where a wife was not entitled to an elective share or equitable distribution. In that case, a husband died, leaving all of his assets to his children, after divorce proceedings had started but before a final judgment of divorce was entered. *Id.* at 340, 576 *A.*2d 872. The Court determined that the wife could not pursue equitable distribution of assets because that remedy could only be obtained pursuant to a divorce and a divorce was no longer possible due to the husband's death. *Ibid.* The plaintiff was also not entitled to pursue her elective share as a spouse is prohibited from making a claim, under *N.J.S.A.* 3B:8–1 if the two no longer live together. *Id.* at 344, 576 *A.*2d 872. However, the Court recognized that the effect of application of the relevant statutes left the plaintiff in a " 'black hole' " and examined the equitable distribution statute and elective share statute to determine whether the combined intent would be to deny all relief. *Ibid.* at 346, 576 *A.*2d 872.

The Court found that the equitable distribution statute's purpose was to fairly divide assets where both had contributed to the marriage, *ibid.*, which evidenced a public policy regarding the rights of spouses to marital property. *Id.* at 348, 576 *A.*2d 872. Similarly, the Court determined that the elective share statute "recognizes that both the needs and rights of a surviving spouse

---

[2] The court recognizes that it may be possible for need to extend beyond death, if, for example, monies were necessary for funeral and burial expenses.

justify a forced or elective share . . . ." *Id.* at 349, 576 *A.2d* 872. Based on the combined intent of the statutes, the *Carr* Court found that a constructive trust could be imposed on assets after concluding that:

[T]he principle that animates both statutes is that a spouse may acquire an interest in marital property by virtue of the mutuality of efforts during marriage that contribute to the creation, acquisition, and preservation of such property. This principle, primarily equitable in nature, is derived from notions of fairness, common decency, and good faith.

*[Ibid.]*

While equitable remedies were utilized based on the combined effect of the statutory scheme in studied in *Carr,* such remedies are not appropriate here, as indicated above. In *Carr,* the Court dealt with a situation where the spouse was left with no right to assets under two statutory schemes due to her husband's untimely death. In the case at hand, however, the court is dealing with a different result, in that we are not left with a disinherited spouse, but heirs of a disinherited spouse whose rights simply do not equate to those of a surviving spouse. In addition, while the court recognizes that the elective share statute may be based on principles of fairness, where both spouses should share in assets, that fairness notion is nevertheless qualified by need.

■ As indicated above, Plaintiff is entitled to pursue the elective share only to the extent that the share was necessary to provide support and/or maintenance for Leo Bilse representing the period between Wilma Bilse's death and Leo's death. Plaintiff has submitted a certification, at the request of the court, listing the approximate expenses of Leo Bilse for this time period, which amount to $19,900.00 ($12,600 was for home health care) of which $3,100 was paid by Wilma's estate (for taxes and utilities). An initial review of the estimate of his assets indicates that Leo's estate may be valued at $80,660.00. Assuming those figures to be true, it appears that Leo had sufficient assets to satisfy his need for support during the time following Wilma's death. Therefore, his heirs are not entitled to pursue his elective share, and plaintiff's complaint is hereby dismissed.