IN THE MATTER OF THE ESTATE OF RICHARD JAMES
KNIGHT, DECEASED.

Argued November 17, 1952—Decided December 22, 1952.

*Mr. Arthur J. O'Dea* argued the cause for the appellant.

*Mr. Edmund B. Hourigan* argued the cause for the respondent (*Messrs. Burke, Sheridan & Hourigan,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The single issue presented is whether a will disposing of the personal property of a soldier in actual military service was valid though he was under 21 years of age at the time of its execution and his death.

The decedent Richard James Knight was a private in the United States Marine Corps. In August 1950, while at sea en route to Korea, he wrote a letter directing the distribution of his personal property in the event of his death. In May 1951 he was killed in action in Korea; he was then only 20 years of age. The County Court denied probate of the letter as a will, solely because of the decedent's non-age. *In re Knight,* 19 *N. J. Super.* 47, 59 *(Cty. Ct. 1952).* On the appeal, certified by this court on its own motion, the parties do not question that the letter constituted a disposition of personal estate "by a soldier while in actual military service" within the statutory exemption embodied in *R. S.* 3:2–7, then in effect. See 1 *Page on Wills (3rd ed. 1941), p.* 735; Note, *Soldiers' Wills—What Constitutes "Actual Military Service,"* 30 *Va. L. Rev.* 481 (1944); *In re Straulina,* 4 *N. J. Misc.* 599, 601 *(Orph. Ct.* 1926); *In re Sheridan,* 21 *N. J. Misc.* 473, 477 *(Orph. Ct.* 1943); *In re Beck,* 142 *N. J. Eq.* 15, 18 *(Prerog.* 1948). In any event, it seems clear to us that the circumstances in the instant matter satisfy the quoted language without regard to whether the present Korean conflict is technically described as war or police action. *Cf. Harding v. Pennsylvania Mut. Life Ins. Co.,* 171 *Pa. Super.* 236, 90 *A. 2d* 589 *(Super. Ct.* 1952). For present purposes it is sufficient to point out that no mention of the term "war" is found in the statutory exemption; historically, under Roman, civil and common law, soldiers in expedition as well as in active war service always received the benefit of the exemption *(In re Straulina, supra; In re Sheridan, supra;* 31 *Harv. L. Rev.* 1022, 1023 (1918)); and it would pervert the ordinary meaning of language to suggest that a soldier who has embarked to join forces in active military combat does not come within the

statutory phrase "in actual military service." See *In re Rippon,* (1943) *p.* 61; *In re Limond,* (1915) 2 *Ch.* 240. While not disputing the foregoing, the respondent contends that the statutory exemption in favor of soldiers, though broadly stated, was intended to apply only to formalities pertaining to execution of the will and not to capacity requirements such as the full age provision then set forth in *R. S.* 3:2–2.

Prior to the recent amendments effective in 1952 (see *N. J. S.* 3*A*:3–5, as amended by *L.* 1952, *c.* 354), the statutory provisions affecting wills were contained in *Title* 3, *subtitle 2, chapter 2* of the *Revised Statutes of* 1937. Thus the full age requirement was set forth in *R. S.* 3:2–2, the formal requisites relating to execution of wills generally were set forth in *R. S.* 3:2–3, and the formal requisites of nuncupative wills were set forth in *R. S.* 3:2–6. The soldiers' and sailors' exemption was set forth in *R. S.* 3:2–7, which provided that the disposition of personal property by soldiers in actual military service "may be made as heretofore" and that "nothing contained in this chapter shall affect such dispositions." The breadth of this last quoted language may perhaps sufficiently evidence the affirmative legislative intent that the full age requirement in chapter 2 be deemed inapplicable without regard to the law in effect before the 1937 *Revision. Cf. Duke Power Co. v. Somerset Co. Bd. of Taxation,* 125 *N. J. L.* 431, 433 *(E. & A.* 1940). The respondent, stressing the other quoted language, contends, however, that theretofore, minor soldiers could not make valid wills and that this was not altered by the *Revision of* 1937 or any other statute in effect at Knight's death. But *cf. Page on Wills, supra,* at *p.* 743; *In re Henninger's Estate,* 30 *Pa. Dist.* 413, 421 (1921); 33 *Iowa L. Rev.* 48, 74 (1947); 49 *W. Va. L. Q.* 162 (1943); 8 *Mo. L. Rev.* 59 (1943).

██ It was generally recognized at early common law that males of 14 could validly dispose of their personal property by will. 1 *Redfield on Wills* (1864), *p.* 15. The Statute of Frauds of 1676 imposed certain requirements with respect to

the disposition of property by will; it contained its famous section 23 which provided that notwithstanding its enactment, any soldier in actual military service could dispose of his personal estate as "before the making of this Act." See 29 *Car. II, c.* 3. In the light of the foregoing it is clear that at common law and even after the passage of the Statute of Frauds a soldier in actual military service could validly dispose of his personal property notwithstanding his non-age. In 1837 the Wills Act (1 *Vict., c.* 26) was passed; section 7 of this act introduced a full age requirement relating to personal property but section 11 set forth that any soldier in actual military service might dispose of his personal estate as "before the making of this act." It has been urged, with some force, that despite its literal purport section 11 was intended to obviate only the formal requisites and had no relation to the full age requirement. See *In re Wernher,* (1918) 1 *Ch.* 339, affirmed (1918) 2 *Ch.* 82; 31 *Harv. L. Rev.* 1022, 1025 (1918); 27 *Yale L. J.* 806 (1918). Nevertheless, it is acknowledged that after the passage of the Wills Act the practice developed in England of admitting to probate personalty wills executed by soldiers, though not of age, and the English text writers accepted this practice to be settled law. See *In re Wernher, supra;* Note, 4 *British Ruling Cases, p.* 901 (1915); *In re Henninger's Estate, supra.* When in 1918 Justice Younger questioned the practice (*In re Wernher, supra*) Parliament immediately passed an act which declared that section 11 authorizes, and always has authorized, such testamentary dispositions by soldiers in actual military service though they are not of full age (7 and 8 *Geo. V, c.* 58); and that is the present law of England. See *Page on Wills, supra,* at *p.* 743, 137 *A. L. R.* 1311 (1942).

We come now to the consideration of the legislative history on the subject within our own State. The first comprehensive act concerning wills was enacted in 1795. It contained no full age requirement relating to personal property, and provided in section 19 that, notwithstanding the act, any sol-

dier in actual military service could dispose of his personal property as "before the making of this act." This act was carried forth in later revisions, and in the *Revision of* 1846 the proviso exempting soldiers was repeated in the same language. In 1850 and 1851 the Legislature supplemented our act concerning wills and for the first time imposed a full age requirement relating to personal property. *L.* 1850, *p.* 280; *L.* 1851, *p.* 218. It is true, as the lower court pointed out, that these statutory enactments did not specifically repeat the soldiers' exemption; but they were simply short supplements to the complete act concerning wills and they should be read as part thereof. See *General Investment Co. v. American Hide & Leather Co.,* 97 *N. J. Eq.* 214, 222 *(Ch.* 1925), affirmed 98 *N. J. Eq.* 326 *(E. & A.* 1925) ; 1 *Sutherland Statutory Construction* (*3rd ed.* 1943), § 1934, *p.* 430. Thus read, there does not appear to be any legislative purpose to restrict the applicability or scope of the soldiers' exemption as broadly expressed and construed in English practice. In any event, later revisors of our statutes found no such purpose, and when our Wills Act was carried forth into the 1877 *Revision,* sections 1 and 3 embodied both the formal requisites and the full age requirement, but section 18 comprehensively provided that notwithstanding the act any soldier could dispose of personal property "as he might have done before the making of this act." See *Duke Power Co. v. Somerset Co. Bd. of Taxation, supra.* Similarly, the *Compiled Statutes* of 1910 and the *Revision of* 1937 set forth, in individual paragraphs, the provisions relating to formal requisites and full age and, in later separate paragraphs, the soldiers' exemption. It is significant that when the *Revision of* 1937 was adopted all doubt as to the effect in England of its soldiers' exemption, carried over into our legislation in similar language, had theretofore been removed by Parliament which had declared that section 11 of its Wills Act of 1837 had always authorized wills of personalty by soldiers in actual military service, though under

age. *Cf. Hall v. Doremus,* 114 *N. J. L.* 47, 53 (*Sup. Ct.* 1934).

 Since its introduction in early Roman Law, various reasons have been advanced for the soldiers' exemption. Caesar apparently intended it as a reward for military service, whereas Justinian later rested it upon the soldier's lack of familiarity with the subject of testamentary dispositions. In modern times the exemption has more often been related to the stress and danger of his situation which may well subordinate the ordinary legal requirements and formalities pertaining to wills and the customary need for satisfying them. However, whatever be the underlying reason, there has been a well recognized policy of construing the exemption "liberally in favor of the power of the testator to make a will" (see *In re Beck, supra,* at *p.* 18; *In re Rippon, supra,* at *p.* 67); and there has long been widespread belief that if a soldier may be called upon to fight though he is under age he should be able "to bequeath his property to whom he pleases." Younger, J., in *In re Wernher, supra.*

 In view of all of the foregoing, we have concluded that when the Legislature enacted *R. S.* 3:2–7 it contemplated that soldiers and sailors in actual military service would be exempt from the full age requirement of our Wills Act as well as its formal requisites, and that consequently their wills of personalty would be subject to early common law principles. See *In re Straulina, supra,* at *p.* 601; *Page on Wills, supra,* at *p.* 743; and the tentative draft of the recent revision of *Titles* 2 and 3 where the reporter noted that *R. S.* 3:2–7 "throws the law back to where it stood prior to the statute of frauds (1676)." Under that law the will in the instant matter was clearly valid. We are satisfied that this conclusion finds adequate support not only from the sweep and liberal construction of the language in the statutory exemption but also from its history read particularly in the light of the English practice in force when our pertinent statutes were adopted. While enacted subsequent to the death of Knight, it ought be noted that our most

recent statute, effective June 18, 1952, provides, in affirmative phraseology, that a "will made by any person of eighteen years of age or upwards while in active military service as a member of the armed forces of the United States in time of war or in time of emergency shall be valid if it be in writing." *L.* 1952, *c.* 354.

Reversed, without costs.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.