282 N.J. Super. 59 (1995)
659 A.2d 500
IN THE MATTER OF THE ESTATE OF RAY D. POST, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1995.
Decided June 14, 1995.
*61 Before Judges PETRELLA, HAVEY and BROCHIN.
Lawrence P. Cohen argued the cause in A-917-94 for appellant Estate of Ray D. Post and as respondent-cross-appellant in A-4014-92 (Courter, Kobert, Laufer, Purcell & Cohen, attorneys; Kevin M. Hahn and Glenn J. Williams, on the brief).
Barbara S. Fox argued the cause for respondent Enid E. Post in A-917-92, and as appellant, as well as respondent on the cross appeal in A-4014-92 (Harris, Dickson, Buermann, Tanner, Ashenfelter, *62 Slous, Fox & Boyd, attorneys; Dorothy G. Black, of counsel; Ms. Fox, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
These are consolidated appeals. The Estate of Ray D. Post (estate) appeals from the Law Division's determination that Enid D. Post, the decedent's surviving wife (plaintiff), was entitled to an elective share. Based on certain valuation decisions the judge found that the property she had derived from her late husband and had acquired from other sources was less than one-third of the augmented estate under the elective share statute, N.J.S.A. 3B:8-1 to -19. Plaintiff appeals from the denial of counsel fees on her claim of a frivolous defense and the estate cross-appeals on a similar claim as to the plaintiff's claims against the estate. We reverse on the estate's appeal and affirm on the plaintiff's appeal and the estate's cross-appeal.
Ray D. Post (decedent), a New Jersey resident, died testate on May 5, 1989, at the age of ninety. Plaintiff, his third wife, was sixty-five years of age at the time of decedent's death. Decedent was also survived by one son from a previous marriage, two granddaughters, and a grandnephew.
Decedent's will, executed on December 5, 1985,[1] was admitted to probate on May 23, 1989. The will named one of his granddaughters as executrix of his estate and made bequests to plaintiff and others. The residuary estate was divided equally among his granddaughters and his grandnephew.
Presumably dissatisfied with the amount left to her, plaintiff instituted suit to recover an elective share under N.J.S.A. 3B:8-1 to -19. The estate disputed her entitlement to an elective share and asserted not only that plaintiff's assets exceeded one-third of the augmented estate, but also that prior to decedent's death, he *63 and plaintiff had lived apart "under circumstances which would have given rise to a cause of action for divorce or nullity of marriage." N.J.S.A. 3B:8-1.
A bench trial took place on various dates between March 4, 1991 and December 10, 1991. Both sides presented evidence on issues of the estate's value and plaintiff's assets. The record is fairly voluminous.
The estate also presented evidence on its marital disqualification defense that: plaintiff had been unhappy with decedent and had expressed interest in obtaining a divorce; plaintiff had been a habitual alcoholic; decedent had become frustrated by plaintiff's demands for more money; plaintiff and decedent had ceased having marital relations in 1986; and plaintiff had refused to take decedent to a hospital while he was allegedly demonstrating symptoms of a heart attack. Plaintiff presented testimony that she had not been a habitual alcoholic, and that any drinking she may have done had been a reaction to the stress resulting from her need to care for the declining mental and physical condition of her husband. She also presented testimony that her behavior and requests for money had been reasonable, and that she had not abandoned or mistreated her late husband.
In an oral decision on June 16, 1992, the judge ruled in favor of plaintiff.[2] He found insufficient credible evidence existed to conclude that plaintiff was a habitual alcoholic, and he ruled that the estate presented little more than conjecture and innuendo as to plaintiff's alleged cruelty and the unreasonableness of her conduct. Thus, the judge found the requirements for disqualification under N.J.S.A. 3B:8-1 were not satisfied.
The judge valued the assets of the total augmented estate at $4,148,889, which included 97 of the 100 outstanding shares in J. Frank Post, Inc. (Post, Inc.), a closely held New Jersey corporation *64 engaged in the distribution of home heating oil.[3] The total augmented estate also included one-half of the total value of the corpus of an irrevocable trust created by decedent in 1975, which provides that interest income was to be paid to him for life, upon his death the income to plaintiff, and upon her death or remarriage, the corpus is to be distributed equally among his two granddaughters. The parties stipulated that the value of the corpus was $482,728 at decedent's death. The court calculated plaintiff's life interest in the 1975 trust at one-half the corpus (as per N.J.S.A. 3B:8-17) at $241,364. The court added the plaintiff's life interest to the augmented estate and then credited the plaintiff's life interest of $241,364 towards the satisfaction of her elective share, pursuant to N.J.S.A. 3B:8-18.
The judge allowed the estate a deduction from the augmented estate of $158,000 in "funeral and administration" expenses, which included costs for reasonable estate expenses, debts, fees, and commissions. However, he rejected the estate's claim that its expenses exceeded $450,000, including the litigation fees. The judge concluded that the lawsuit was a contest between individuals and that the bulk of the estate's expenses over the amount allowed was for attorneys' fees and costs amassed during this litigation,[4] not for ordinary "funeral and administration" expenses.
The judge also found that plaintiff possessed $1,175,827 in assets chargeable against her elective share. He did not include in the augmented estate $10,000 in cash which plaintiff stipulated she had brought into the marriage approximately fourteen years prior to decedent's death. In so doing, the judge concluded the $10,000 had long since been dissipated and no longer existed at the time of decedent's death. Neither party presented evidence that the same $10,000 was kept separate and apart from the marital assets.
*65 The judge determined that decedent had made inter-vivos and testamentary gifts of Post, Inc. stock to plaintiff so that she held 34% of the outstanding shares. Two employees of Post, Inc. were each given or devised a total of 33% of decedent's stock. The expert testimony on each side valued the outstanding shares for "liquidation purposes." This determined the open market liquidation value of the stock at the time of the decedent's death.
Plaintiff's expert, Lawrence Biel, testified that the value of 100% of Post, Inc. stock was $878,000, and that the value of decedent's 97 shares was $851,660. He opined that plaintiff's shares were worth $289,564. However, notwithstanding his liquidation value approach, Biel also recommended subtracting 50% of the worth of plaintiff's shares as a "minority discount" because her minority shares would assertedly be worth less in the open market. As later discussed, the 50% reduction in value ultimately resulted in the judge valuing plaintiff's Post, Inc. holdings at $144,782 for purposes of satisfying plaintiff's elective share.
The estate's expert, Gary Trugman, testified the liquidation value of 100% of Post, Inc. stock was only $468,000, which set the value of plaintiff's shares at approximately $159,000. Trugman did not apply a "minority discount" because he considered such a discount inappropriate in a liquidation analysis. Neither expert nor the court considered, however, the fact that as of the time of trial plaintiff had sold her stock and properties related to the business to the two Post, Inc. employees for $200,000 on April 12, 1991;[5] $144,460 was attributable to the stock. Without commenting on this April 1991 sale of the stock, the trial judge accepted Biel's opinion, finding Biel more credible. The judge, however, initially determined that the 50% "minority discount" was too great and adjusted the discount to 30% without any explanation as to how he reached that percentage.
*66 Also, in determining what property plaintiff owned as a surviving spouse, see N.J.S.A. 3B:8-18, the judge valued at "zero" a trust established by plaintiff's father in 1953 (the Brix Trust). Evidence at trial revealed that the Brix Trust provides that income is to be paid to plaintiff's mother for her life, and upon her death, the corpus is to be divided into two equal parts and held in trust for the benefit of plaintiff and her sister. The trust also authorizes the plaintiff's mother's trustee to invade the corpus for her support; upon the death of plaintiff's mother,[6] plaintiff may also invade the corpus for an aggregate amount not to exceed $20,000 in toto. The parties stipulated that at decedent's death, plaintiff's mother was still alive (age 85) and the value of the corpus of the Brix Trust was $710,654. The trial judge found the trust could not be properly valued because of insufficient evidence, and he thus attributed no value to it.
The court calculated that plaintiff's elective share, one-third of the total augmented estate, was $1,382,963. The court then found the elective share exceeded plaintiff's assets of $1,175,827 by $207,136.
Thereafter, the parties filed cross-motions for reconsideration. On July 2, 1992, the judge modified certain aspects of his June 16 decision. Among the modifications, the judge sua sponte increased the total augmented estate by adding the value of the remainder interest in the 1975 trust, $241,364. The judge apparently reasoned that the irrevocable trust was subject to the elective share statute even though it was created before the May 28, 1980 effective date of the statute. The judge also increased from 30% to 50% the "minority discount" he used in valuing plaintiff's shares of Post, Inc. stock to accord with plaintiff's expert's testimony. The judge considered his earlier determination arbitrary because he did not have the requisite expertise to *67 assess the value of the stock on the open market. Final judgment was entered on October 5, 1992.[7]
Thereafter, both parties cross-moved for statutory counsel fees. See N.J.S.A. 2A:15-59.1 (prevailing party may recover counsel fees if the losing party's claims were frivolous or presented in bad faith). Plaintiff claimed the estate's marital disqualification defense was frivolous and asserted in bad faith because the trial judge had found no grounds to establish a defense based on habitual intoxication or extreme mental cruelty. The estate countered that plaintiff had not demonstrated it had acted in bad faith, and that it was entitled to counsel fees because plaintiff's elective share action was instituted and continued in bad faith. The judge denied both motions on February 26, 1993, reasoning plaintiff could not recover because sufficient grounds existed to allege the disqualification defense, and the estate could not recover because it was not a "prevailing party." An amended judgment was entered on April 19, 1993.
The parties raise various arguments on these consolidated appeals. The estate contends that the trial judge erred in (1) adding to the augmented estate the value of the remainder interest in decedent's 1975 irrevocable trust; (2) refusing to calculate and apply the value of the Brix Trust against plaintiff's elective share; (3) allowing a 50% reduction in the value of plaintiff's share of Post, Inc. stock; (4) relying solely upon Biel's testimony in determining the value of Post, Inc. stock; (5) failing to grant the estate's motion for involuntary dismissal of plaintiff's elective share complaint; (6) not including plaintiff's $10,000 in the amount charged against her elective share; (7) failing to remain fair and impartial; (8) limiting funeral expenses and estate administration costs to $158,000; (9) failing to accept the estate's marital disqualification defense; and (10) failing to award it counsel fees under *68 N.J.S.A. 2A:15-59.1. On plaintiff's appeal the estate takes the position that the judge properly rejected plaintiff's motion for counsel fees under N.J.S.A. 2A:15-59.1, but claims it is entitled to such fees.
Our disposition of the issues in contentions (1), (2), and (3) of the estate resolve its appeal. The remaining issues have been considered on both appeals and are without merit. R. 2:11-3(e)(1)(A) and (E).

I.
We first consider the estate's claim that the judge erred in including the 1975 irrevocable trust established by decedent in the value of the augmented estate.
N.J.S.A. 3B:8-3 defines the augmented estate as:
The "augmented estate" means the estate reduced by funeral and administration expenses, and enforceable claims, to which is added the value of property transferred by the decedent at any time during marriage, to or for the benefit of any person other than the surviving spouse, to the extent that the decedent did not receive adequate and full consideration in money or money's worth for the transfer, if the transfer is of any of the following types:
a. Any transfer made after May 28, 1980, under which the decedent retained at the time of his death the possession or enjoyment of, or right to income from, the property.
* * * * * * * *
[Emphasis added]
Although the trial judge observed that the 1975 trust was not created after the May 28, 1980 date, he indicated he did not understand the significance of 1980 and the preclusive aspect of that date. He thus decided to add the "other part" of the 1975 trust to the augmented estate. In so doing he erred.
The parties do not dispute that the elective share statute did not take effect until May 28, 1980. The initial elective share statute (the predecessor to N.J.S.A. 3B:8-1 to -19) was originally approved on February 28, 1980 in L. 1979, c. 483 and was codified at N.J.S.A. 3A:38A-1 to -8. However, that statute did not take effect until ninety days after its enactment. (L. 1979, c. 483 § 9).
*69 The elective share provisions of the predecessor statute took effect only prospectively, N.J.S.A. 3A:38A-1(a), and provided that a surviving spouse had a right of election to take an elective share of one-third of the augmented estate only with regard to a married person who "dies domiciled in this State on or after the effective date of this act" (i.e., on or after May 28, 1980). As indicated in the Statement appended to Assembly Bill No. 18 (which became L. 1979, c. 483), this legislation was intended to introduce a "new concept into New Jersey law" by providing for an "`elective share' to a decedent's surviving spouse." See 5A N.J.Practice, Wills and Administration § 459 at 460; § 464, at 477 n. 5 (rev. 3d ed. 1982).
More significantly, N.J.S.A. 3A:38A-2 stated:
The "augmented estate" means the estate reduced by funeral and administration expenses, and enforceable claims, to which is added the sum of the following amounts:
a. The value of property transferred by the decedent at any time during marriage, to or for the benefit of any person other than the surviving spouse, to the extent that the decedent did not receive adequate and full consideration in money or money's worth for the transfer, if the transfer is of any of the following types:
(1) Any transfer hereafter made under which the decedent retained at the time of his death the possession or enjoyment of, or right to income from, the property.
[Emphasis added]
The word "hereafter" in N.J.S.A. 3A:38A-2(a)(1) of necessity means after the May 28, 1980 effective date of the act. The Sponsor's Statement to Assembly Bill No. 18 also makes this clear by noting that the augmented estate is "defined as the decedent's estate reduced by expenses and increased by: (1) property transferred by the decedent after the effective date of the act during marriage in which he retained an interest." [Emphasis added]
On January 6, 1982, L. 1981, c. 405, was approved, effective May 1, 1982, and it "recodified" N.J.S.A. 3A:38A-1 to -8 as N.J.S.A. 3B:8-1 to -19. In re Estate of Friedlein, 230 N.J. Super. 100, 103 n. 1, 552 A.2d 1018 (App.Div. 1989). There was no material change worked by this recodification. See In re Estate of Cole, 200 N.J. Super. 396, 402, 491 A.2d 770 (Ch.Div. 1984).
An example of a non-material change is contained in N.J.S.A. 3B:8-1, which gives a surviving spouse a right of election to take *70 an elective share of the augmented estate only with regard to a person who "dies domiciled in this State, on or after May 28, 1980." Compare N.J.S.A. 3B:8-1 and its predecessor N.J.S.A. 3A:38A-1 (referring to a married person who "dies domiciled in this State on or after the effective date of this act" (i.e., on or after May 28, 1980)). In addition, N.J.S.A. 3B:8-3 adds the value of property transferred by the decedent during the marriage to any person other than the surviving spouse to the augmented estate, "if the transfer is of any of the following types: (a) Any transfer made after May 28, 1980, under which the decedent retained at the time of his death the possession or enjoyment of, or right to income from, the property." Compare N.J.S.A. 3B:8-3 and its predecessor N.J.S.A. 3A:38A-2(a) (referring to adding the value of property transferred by the decedent during the marriage to any person other than the surviving spouse to the augmented estate, "if the transfer is of any of the following types: (1) Any transfer hereafter made [i.e., made on or after the act's May 28, 1980 effective date] under which the decedent retained at the time of his death the possession or enjoyment of, or right to income from, the property.").
The language in N.J.S.A. 3B:8-3 is clear and unambiguous and requires that transfers made prior to May 28, 1980 are excluded from valuation of the augmented estate. The remainder interest in the 1975 irrevocable trust does not qualify as section 3B:8-3 property because it was made before the act's effective date. The 1975 trust was "irrevocable," and decedent retained no right to alter or amend it in any respect. Hence, the trial judge erred in including any value (here $241,364) for the remainder interest in calculating the decedent's augmented estate. This error requires a reduction in the value of the augmented estate from $4,148,889 to $3,907,525. As a result, plaintiff's elective share at this point must be reduced from $1,382,963 to $1,302,508.[8]

*71 II.
We turn next to the issue of inclusion of the 1953 Brix Trust in satisfaction of plaintiff's elective share and whether the judge erred in ascribing no value to her interest in that trust.
As noted, the trial judge found that plaintiff had a "vested but non-possessory interest" in the Brix Trust at decedent's death because plaintiff's mother was still alive.[9] She also had no present right to invade the corpus. Plaintiff acknowledges that the judge ruled that her "interest" in the Brix Trust "did constitute property owned by the surviving spouse in accordance with N.J.S.A. 3B:8-18," and therefore, this interest was "required to be applied in satisfaction of her elective share pursuant to N.J.S.A. 3B:8-18." The estate correctly notes that because plaintiff has not appealed from this ruling, the only related issue for us to decide on this appeal is how plaintiff's interest in the Brix Trust should have been valued in satisfaction of plaintiff's elective share.
The Brix Trust valuation is controlled by N.J.S.A. 3B:8-17, which provides:
In an action for an elective share, the electing spouse's total or proportional beneficial interest in any life estate in real or personal property or in any trust shall be valued at one-half of the total value of the property or trust or of the portion of the property or trust subject to the life estate.
[Emphasis added]
N.J.S.A. 3B:8-18(a) provides that the amount of the surviving spouse's elective share is to be satisfied by applying (among other things) the "value of all property, estate or interest therein, owned by the surviving spouse in his [or her] own right at the time of the decedent's death from whatever source acquired."
The judge, relying on an isolated paragraph in the previously referenced Sponsor's Statement to Assembly Bill No. 18, concluded *72 that the Legislature had not intended to apply an immutable one-half the corpus value to a life estate not created by the decedent whose estate is subject to the elective share. He stated that if some different value had been presented he would have used it, but because there was no evidence of any other value he was unable to find any value for plaintiff's interest in the Brix Trust.
In so ruling the judge erred. Where the statutory language is clear and unambiguous there is no room for judicial interpretation or resort to rules of construction or extrinsic matters. Vreeland v. Byrne, 72 N.J. 292, 302, 370 A.2d 825 (1977). Here, the statutory language is clear and unambiguous. In such situations, a court may not indulge in an interpretation other than what the express words in the statute require. Duke Power Co. v. Patten, 20 N.J. 42, 49, 118 A.2d 529 (1955). We must give full effect to every word in the statute whenever possible and not presume that the Legislature intended any word in the statute to be inoperative, superfluous or meaningless, or to mean something other than its ordinary meaning. Gabin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6 (1969); Hoffman v. Hock, 8 N.J. 397, 406-407, 86 A.2d 121 (1952). Our function in such circumstances is to enforce the statute as written and in accordance with its terms. Sheeran v. Nationwide Mut. Ins. Co., Inc., 80 N.J. 548, 556, 404 A.2d 625 (1979).
Here, the legislative scheme creates a purely statutory elective share which had no existence in this State but for its adoption in 1980, subject to specific statutory requirements. N.J.S.A. 3B:8-17 plainly requires that the electing spouse's total or proportional beneficial interest in any life estate in "any" trust "shall" be valued at one-half of the value of the trust or of the portion of the trust subject to the life estate. This section must be read in pari materia with N.J.S.A. 3B:8-18(a), which requires that the amount of a surviving spouse's elective share be satisfied by applying (among other things) the "value of all property, estate or interest therein, owned by the surviving spouse in his [or her] own right at *73 the time of the decedent's death from whatever source acquired." [Emphasis added]
The paragraph in the Sponsor's Statement to A-18, upon which the judge had relied, simply explained how the valuation methodology in N.J.S.A. 3B:8-17 was designed to make it impossible for a surviving spouse to take an elective share of one-third of the augmented estate in the "ordinary case," i.e., where the surviving spouse is bequeathed the income for life from the bulk of decedent's probate estate, which is not appreciably augmented by gratuitous transfers by the decedent during the marriage to persons other than the surviving spouse. See N.J.S.A. 3B:8-3. The "ordinary case" example clearly does not establish legislative intention to apply the valuation methodology in N.J.S.A. 3B:8-17 only to a life estate "created by the decedent whose estate is ... subject to the elective share."
The valuation methodology in N.J.S.A. 3B:8-17 is clear and requires here that one-half of one-half the value of the Brix Trust as of the time of the decedent's death must be included in plaintiff's assets when determining her eligibility for an elective share. The salutary purposes are not only to take into account the surviving spouse's actual and potential assets at the decedent's death, but also without extensive disputes over the valuation of that interest, to fix a definite time for valuation of the trust, although the eventual amount received by the electing spouse might be more or less than the value of the electing spouse's interest at the time of decedent's death.[10] The judge misconstrued *74 that "ordinary case" example of the effect of N.J.S.A. 3B:8-17 as evincing legislative intent in enacting that section to only "deal with the effects of things done by that decedent whose estate is subject to the elective share." He also erred in stating that the Legislature, in enacting that section had "no concern about the settlor or decedent in some other estate or the creator of some other trust who created a sum that ... the surviving spouse might have independently had ... an interest."
*75 Thus, the value of one-half of plaintiff's one-half interest in the Brix Trust is $177,663. That amount must be applied to increase the value of plaintiff's property derived from decedent or owned at his death in her own right from $1,175,827 to $1,353,490. As a result, taken together with the decrease in the value of the augmented estate to $3,907,525 calculated in point I, the value of plaintiff's property exceeds what would be a one-third elective share of $1,302,508. Hence, plaintiff is not entitled to an elective share.

III.
We next turn to whether the judge erred in allowing a 50% reduction in value to plaintiff's bequeathed 34% interest in Post, Inc. Both experts used the "liquidation value" method. The judge accepted the finding of plaintiff's expert's value of the stock as of the date of death, and there is no basis for us to disturb his finding as to the use of the liquidated value method or the total value for the stock. The only dispute is whether any discount was necessary or required in valuing plaintiff's 34% interest.
Plaintiff's expert, Biel, estimated the value of all of the shares of Post, Inc. at decedent's death at $878,000. Thus, decedent's ninety-seven shares were worth $851,660; plaintiff's 34% interest had a mathematical value of $289,564 (34% of $851,660). However, plaintiff's expert applied a 50% discount to plaintiff's 34% interest, essentially to reflect her "minority interest" in Post, Inc., thus reducing the value of plaintiffs interest to $144,782.
On cross-examination Biel conceded that if Post, Inc. had been liquidated as of the date of decedent's death there was no doubt that plaintiff would not get less than her percentage of the net proceeds of that liquidation. He acknowledged that, "if there would be a liquidation, there would be no discount applied to her interest in the corporation." His only rationale for using the 50% figure was that it was his judgment, and that plaintiff's minority interest "would demand a discount that large."
*76 The estate's expert fixed full value of $468,000 for Post, Inc. as of the date of decedent's death. He applied plaintiff's percentage interest and valued her shares at $159,000, without any discount, because he stated that in a "liquidation value analysis they're [discounts] not appropriate." He explained:
If the business was being valued as a going concern, then a discount or premium would certainly have to be considered.... [But] in a liquidation, assuming the company were liquidated for $468,000, each shareholder would get their pro rata share of the liquidation proceeds. There is no discount [or premium] associated with that.
The trial judge had initially declined to accept Biel's "automatic" 50% discount because it "was arbitrary and not explained." The judge instead chose 30% because he found, without explanation, that some discount was necessary. However, the judge changed his mind in connection with a motion for reconsideration and accepted the 50% discount because:
I'm not an expert at all in the area and although the fact finders may bring in their own experiences ... to their fact-findings  I don't have any ideas of my own to bring to them.... [Therefore,] ... in the case of Biel [plaintiff's expert] I should take his whole testimony.
N.J.S.A. 3B:8-18(a) requires that the amount of the surviving spouse's elective share must be satisfied by applying (among other things) the "value of all property ... succeeded to by the surviving spouse as a result of decedent's death." Such property "includes property passing to the surviving spouse under the decedent's will." In re Estate of Friedlein, supra, 230 N.J. Super. at 104, 552 A.2d 1018. Moreover, as explained in In re Estate of Cole, supra, 200 N.J. Super. at 404, 491 A.2d 770:
The second key statement in N.J.S.A. 3B:8-18(a) is that the value of property coming to the survivor by reason of decedent's death is deducted from her calculated [elective] share. That means, among other things, that, if the decedent leaves anything to his spouse in his will or by non-testamentary transfer taking effect on death, its value is deducted from her [elective] share. As a result, even though she has elected against the will, she must take her elective share first out of assets the decedent has chosen to give her by will or otherwise.
[Emphasis added]
Accord In re Estate of Holling, 263 N.J. Super. 146, 150, 622 A.2d 273 (App.Div. 1993). In light of the fact that N.J.S.A. 3B:8-18(a) *77 requires that "bequests to the spouse are to be made as the decedent directed," and that the "value of the bequest[s] ... [must] be deducted from the [spouse's] elective share," the value of the decedent's bequests to the surviving spouse must be ascertained. In re Estate of Cole, supra, 200 N.J. Super. at 405 n. 3, 491 A.2d 770. The elective share statute does not recognize a surviving spouse's right to claim discounts or seek reductions in value for assets which the spouse receives under decedent's will so as to artificially inflate his or her entitlement to additional assets. N.J.S.A. 3B:8-1 grants a spouse the right to an elective share of only "one-third of the augmented estate," and does not guarantee a surviving spouse a controlling interest in the estate or any property as to which he or she receives a share. Obviously, in the usual situation one-third would not be a controlling interest.
Indeed, to use plaintiff's reasoning, discounting a one-third interest where it was the only asset passing under the will would value for elective share purposes the one-third interest at one-sixth. However, after an elective share reapportionment the spouse would end up owning a one-half interest.
There is little doubt that in a liquidation sale situation a minority discount or majority premium would be inappropriate. In Walter S. Cheesman Realty Co. v. Moore, 770 P.2d 1308, 1312-1313 (Col.Ct.App. 1988), cert. denied (Col. 1989), a minority discount was not considered appropriate where liquidation or a sale of the company as a whole was imminent. The dissolution of the company and liquidation of all corporate assets is a circumstance where "lack of control and marketability of minority shares are not relevant factors to be considered because the corporation will not continue in existence." A minority share would be no less valuable than any other share if, for example, "the corporation as a whole was sold to a single buyer, so too, once the corporation decides to dissolve [and liquidate all of its assets], any control element of value in the majority block of shares is lost."
We are satisfied that discounts are not permissible when a liquidation approach is used because in such a case no shareholder *78 receives a discount or premium in relation to any other shareholder. Both appraisers agreed that Post, Inc. should be valued by using the liquidation valuation method which would yield the "highest and best use" of Post, Inc. assets. Because the trial judge's findings were based on that valuation method, a discount is inappropriate.
Accordingly, the value of plaintiff's property derived from decedent or owned at his death in her own right must be increased by $144,782 (the amount by which it was erroneously discounted by the trial judge).
As a result, whether in conjunction only with point I or point II, or with both, this adjustment results in plaintiff's property from decedent or owned in her own right exceeding a one-third elective share. Thus, plaintiff is not entitled to an elective share.

IV.
In light of our determination we need not address the remaining issues raised by the estate in connection with its appeal since those issues are moot. Nonetheless, as previously noted, we have considered them and reject those arguments as meritless.
With respect to plaintiff's appeal in which she claims error in the judge's denial of her motion for reimbursement of counsel fees incurred in responding to the estate's alleged frivolous defense of marital disqualification, under the frivolous lawsuit statute, N.J.S.A. 2A:15-59.1, as well as the estate's cross-appeal from the judge's denial of reimbursement of counsel fees on the basis that her elective share complaint was commenced and continued in bad faith, they are without merit. As to these issues we affirm substantially for the reasons expressed by the trial judge.
The judgments of October 5, 1992 and April 19, 1993, ordering an elective share are reversed. We affirm the order of March 12, 1993, denying the motions for counsel fee awards.
*79 BROCHIN, J.A.D. (dissenting in part).
I respectfully differ from my colleagues with respect to two points of their opinion. The first of these is their holding that plaintiff's interest in the Brix Trust should be valued at one-half of the value of that portion of the corpus of the trust which is subject to plaintiff's life estate. The second is their holding, with respect to plaintiff's Post, Inc. stock, that "discounts are not permissible when a liquidation approach is used because in such case no shareholder receives a discount or premium in relation to any other shareholder." How plaintiff's interest in the Brix Trust and her Post, Inc. stock are valued will determine what additional amounts, if any, the plaintiff is entitled to take from the decedent's estate in satisfaction of her elective share.

-1-
The evident purpose of the elective share statute, N.J.S.A. 3B:8-1 et seq., is to assure that upon the death of one spouse, the survivor is left in possession of property whose value is equal to at least one-third of the decedent's "augmented estate." Roughly speaking, the "augmented estate" is the decedent's net probate estate at the date of his or her death, increased by the value of any inter vivos transfers over which the decedent retained substantial control or from which he or she had the right to derive substantial benefits. When the surviving spouse possesses property valued at no less than one-third of the decedent's augmented estate, regardless of whether that property was acquired from the deceased spouse or from any other independent source, the purpose of the elective share is satisfied. Therefore, to calculate what amount, if any, a surviving spouse is entitled to take from the estate of a deceased spouse in satisfaction of her elective share, a court must determine both the value of the decedent's augmented estate and the value of the surviving spouse's property. N.J.S.A. 3B:8-18.
N.J.S.A. 3B:8-17 states a rule for valuing one class of property that may be owned by a surviving spouse. This section provides:

*80 In an action for an elective share, the electing spouse's total or proportional beneficial interest in any life estate in real or personal property or in any trust shall be valued at one-half of the total value of the property or trust or of the portion of the property or trust subject to the life estate.
In the present case, plaintiff holds a life estate in half the assets of the Brix Trust. This trust was created by her father during his lifetime. He retained a life estate and gave successive life estates to plaintiff's mother and then to plaintiff and her sister equally. Plaintiff's mother has the right to invade corpus. She was eighty-five years old when plaintiff's husband died, and we were informed that she was alive on the date this case was argued. Plaintiff was sixty-five years old when her husband died. Nonetheless, the majority opinion in the present case holds that plaintiff's life estate in the Brix Trust must be valued by the literal application of N.J.S.A. 3B:8-17. In other words, since she has a life interest in half the trust corpus, the majority opinion values her interest as if it were worth one-fourth the value of the corpus, even though plaintiff will have no right to receive trust income until after her mother's death.
That holding, in my view, makes the application of the statute arbitrary and irrational and raises serious questions about its constitutionality. To illustrate, compare the rights of two surviving spouses, each of whom elects to take his elective share from his deceased spouse's estate. Suppose that in each case the value of the deceased spouse's augmented estate is $1,000,000. Suppose that neither decedent has willed anything to his surviving spouse and that the sole asset of each of the surviving spouses is a life interest in a trust which will produce a perpetual income of $350,000 a year.
Suppose the life estate of one of the surviving spouses is already vested in enjoyment; that is, that the life tenant of the trust is receiving the income currently at the time of his spouse's death. By any reasonable valuation, the corpus of that trust will be worth far more than one-third of the deceased spouse's $1,000,000 augmented estate. That surviving spouse will not be entitled to take any property from the decedent's estate as an elective share. *81 N.J.S.A. 3B:8-1. That result is consistent with the purpose of the elective share statute because the legislature has decided that a surviving spouse who owns property worth at least one-third of the value of the deceased spouse's augmented estate has sufficient means so that he or she should not be entitled to take against the will.
Suppose that the other surviving spouse will succeed to the enjoyment of the $350,000 income from his or her trust only after the deaths of three nephews, all of whom are still minors. By hypothesis, that surviving spouse has no income and is unlikely ever to receive income from the trust. Nonetheless, according to the majority opinion in this case, that surviving spouse's interest in the life estate must also be valued at more than one-third of the decedent's augmented estate and that surviving spouse also will not be entitled to take any property from the deceased spouse's estate. That result is entirely contrary to the evident intent of the statute because, in our hypothetical, the second surviving spouse will be left without either income or a marketable asset.
The majority opinion, in effect, interprets N.J.S.A. 3B:8-17 as establishing an irrebuttable presumption that a life estate is always worth "one-half of the total value of the property or trust or of the portion of the property or trust subject to the life estate." Because that presumption is contrary to fact and discriminates among surviving spouses without rational justification, the statute, if so construed, would be unconstitutional. See Vlandis v. Kline, 412 U.S. 441, 451, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63, 71 (1973) (irrebuttable presumption that an applicant for admission to a Connecticut state college who has entered the state within one year of application is not a bona fide resident of the state violates due process); Heiner v. Donnan, 285 U.S. 312, 325, 52 S.Ct. 358, 360, 76 L.Ed. 772, 778 (1932) (irrebuttable presumption that an inter vivos gift made within two years prior to the donor's death was made in contemplation of death and is therefore subject to an estate tax violates the due process provision of the Fifth Amendment); Schlesinger v. State of Wisconsin, 270 U.S. *82 230, 240, 46 S.Ct. 260, 261, 70 L.Ed. 557 (1926) (irrebuttable presumption that gift of a material portion of a decedent's estate within six years of his death was made in contemplation of death and is therefore subject to inheritance tax violates due process clause of the Fourteenth Amendment)[1]; see Howard Savings Institution v. Kielb, 38 N.J. 186, 199, 183 A.2d 401 (1962) (recognizing the principle that a statute is unconstitutional if it seeks to accomplish by an irrebuttable presumption what the legislature could not accomplish directly).
The vice which is illustrated by the hypothetical comparison inheres in the present case as well. The only difference is one of degree. In this case plaintiff will probably out-live her mother. But at the date of her husband's death and, insofar as is disclosed by the record, at the present time, plaintiff receives no income from her interest in the Brix Trust. Her interest in that trust is worth less than it would be worth if she were receiving trust income. Consequently, in determining what amount, if any, plaintiff is entitled to take from her late husband's estate, it is unreasonable to treat her as if she were a current recipient of Brix Trust income.
The section of the statute on which the majority opinion premises its prescription for the valuation of plaintiff's interest in the Brix Trust is a product of the legislature's using the Uniform Probate Code as its model but rejecting crucial language. The New Jersey elective share statute was "derived (with numerous changes) from the Uniform Probate Code §§ 2-201 to 2-207." 5A N.J.Practice, Wills and Administration, § 459 at 463 (rev. 3d ed. 1982). See In re Estate of Cole, 200 N.J. Super. 396, 402-04, 404 n. *83 3, 491 A.2d 770 (Ch.Div. 1984) ("[m]uch of our [elective share] statute follows the Uniform Probate Code," but "our Legislature omitted one section of the Uniform Probate Code and radically altered another"). The altered section of the Code is Section 2-207(a). In the Uniform Probate Code, that section says that "the electing spouse's beneficial interest in any life estate or in any trust shall be computed as if worth one-half of the total value of the property subject to the life estate, or of the trust estate, unless higher or lower values for these interests are established by proof." (Emphasis added.) The valuation problem exemplified by the present case resulted from the omission of the underlined clause from the New Jersey elective share statute.
However, the language of our elective share statute does not require the result reached by the majority in this case. The formula which N.J.S.A. 3B:8-17 establishes for evaluating a surviving spouse's interest in a life estate affects the amount which he or she is entitled to take from a deceased spouse's augmented estate only if the life estate is "property, estate or [an] interest therein, owned by the surviving spouse in his own right at the time of the decedent's death...." within the meaning of N.J.S.A. 3B:8-18. In order to achieve an interpretation of the elective share statute which produces reasonable results and which avoids doubts about its constitutionality, I would hold that a life estate which is not yet vested in enjoyment at the time of the deceased spouse's death is not "property, estate or [an] interest therein, owned by the surviving spouse in his own right at the time of the decedent's death...." Cf. e.g. New Jersey State Bd. of Higher Educ. v. Board of Directors of Shelton College, 90 N.J. 470, 478, 448 A.2d 988 (1982) (statute will be construed to avoid constitutional defects if statute is reasonably susceptible of such construction); New Capitol Bar & Grill Corp. v. Division of Employment Sec., Dept. of Labor and Industry, 25 N.J. 155, 160, 135 A.2d 465 (1957) (statute may be expanded or limited according to manifest reason and its obvious purpose); Midlantic Nat. Bank v. Peerless Ins. Co., 253 N.J. Super. 137, 142, 601 A.2d 243 (App.Div. 1992) *84 (statutes are to be read in a commonsense manner which advances the legislative purpose).

-2-
A valuation methodology which uses "liquidation value" attempts to determine the value of all of the outstanding shares of a corporation by estimating the proceeds of sale of all assets of the corporation as separate assets, and not as inter-related parts of a going business. A valuation methodology which uses "going concern value" estimates the value of the business as a going operation, a value which is dependent primarily upon the profit that the business generates or is capable of generating. Either or both of these methods could properly have been utilized to determine the value of the Post, Inc. shares owned by plaintiff, but neither of these methods, by itself, can provide an unqualified answer to the valuation question which N.J.S.A. 3B:8-18 requires the court to answer. That question is, what is the fair market value of the thirty-four percent of the stock of Post, Inc. in plaintiff's hands at the date of her husband's death?
Liquidation value methodology purports to determine what plaintiff's shares would be worth if the business were liquidated. But the business was not liquidated, and it was not about to be liquidated. Therefore, from the hypothetical liquidation value, the court must decide what amount of money plaintiff could sell her shares for. Because prompt liquidation was not in the offing, the shares in plaintiff's hands could have been worth more or less than her pro rata share of their liquidation value. Because the other two-thirds of the stock was held by persons who were running the business, some discount for plaintiff's shares was probably appropriate. Consequently, my colleagues' assertion that application of the liquidation method of determining value precludes a discount from that value is, in my view, erroneous.
Whether the shares in plaintiff's hands are subject to a discount and, if so, what the amount of that discount should be requires expert testimony. The trial court initially rejected the expert testimony that was offered for lack of an adequate evidentiary *85 foundation. Subsequently, for lack of anything more persuasive, the court accepted the fifty-percent discount suggested by plaintiff's expert. Significantly, however, after applying a fifty-percent discount, plaintiff's expert valued plaintiff's thirty-four percent stock interest at $144,782. The estate's expert did not use a discount. But he placed a lower aggregate value on all of the outstanding stock and, on that basis, valued plaintiff's interest at $159,000. During the period when the case was still being tried, plaintiff sold her shares for $144,460. All three of these values are obviously close to one another. Only my colleagues' determination that plaintiff's stock was worth $289,564 seems out of line. On the basis of the evidence presented at trial, I would hold that the trial court's finding that plaintiff's shares are worth $144,782 was not an abuse of discretion.

-3-
I agree with the majority that the trial court erred in calculating the value of the decedent's augmented estate as if it included the value of the 1975 irrevocable trust established by plaintiff's late husband. Since I would accept the trial court's valuation of plaintiff's interest in the Brix Trust and of her Post, Inc. stock, I would hold that the value of the augmented estate is $3,907,525. Plaintiff is therefore entitled to an elective share of $1,302,508. The value of the property which she has received from the defendant and from other sources that are to be considered as satisfying her elective share totals $1,175,827. Plaintiff is therefore entitled to receive an additional $126,681 from the estate for the full satisfaction of her elective share. I would remand for the entry of judgment in that amount.
NOTES
[1] A July 22, 1986 codicil adding a monetary bequest is not relevant here.
[2] At the end of plaintiff's case, the judge reserved decision on the estate's motions for involuntary dismissal (R. 4:37-2(b)) and for judgment in its favor (R. 4:40-1).
[3] At the time of decedent's death, plaintiff held one share of stock in Post, Inc., and two employees of the company each held one share.
[4] Counsel fees in this matter exceeded $200,000 at the trial level.
[5] At oral argument the estate's attorney represented, and it was not disputed, that plaintiff rejected an offer of $247,000 from a beneficiary under the will.
[6] According to plaintiff's counsel at oral argument on March 20, 1994, plaintiff's mother is still living.
[7] After the July 2, 1992 modifications, and plaintiff's decision to waive certain credits due her, the estate owed plaintiff a total of $143,766. The judge apportioned this sum on a pro rata basis among the recipients under decedent's will.
[8] Based on this calculation, plaintiff's property received from decedent or owned at his death in her own right totalled $1,175,827. Instead of $207,136 ($1,382,963 minus $1,175,827), the amount necessary to satisfy plaintiff's elective share would now be $126,681 ($1,302,508 minus $1,175,827).
[9] In fact, there is the possibility that the trust corpus might be substantially or wholly depleted by her mother.
[10] Contrary to the assertions of our dissenting colleague, the Legislature in N.J.S.A. 3B:8-17 has not established an irrebuttable presumption that "a life estate" is, as a fact, always worth one-half of the total value of the trust subject to the life estate. Rather, the Legislature decided to assign a 50% value to a surviving spouse's interest in "any life estate" in "any trust." N.J.S.A. 3B:8-17. In other words, the Legislature, as revealed by the Sponsor's Statement to A-18, by deliberate design placed a "valuation of one-half of the principal" on all surviving spouses' interests in "life estates."

For example, N.J.S.A. 3B:3-1, which says that any person "18 or more years of age who is of sound mind as a matter of substantive law may make a will" does not establish an "irrebuttable presumption." The Legislature has, by this statute, fixed the "qualifying age for testamentary capacity." In re Estate of Knight, 19 N.J. Super. 47, 49, 87 A.2d 778 (Cty.Ct.), rev'd on other grounds, 11 N.J. 83, 93 A.2d 359 (1952). N.J.S.A. 3B:3-1 is of interest here given the dissent's reference to Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), wherein the dissenting justice noted that it has, for example, "never occurred to anyone to suggest that a state could not, by statute, fix the age of consent, or the age of competence to make a will or conveyance, although some included within the class selected as competent might be less competent than some who are excluded".
That the Legislature made a deliberate choice in its version of the elective share statute is revealed by the fact that the New Jersey elective share statute was "derived (with numerous changes) from the Uniform Probate Code §§ 2-201 to 2-207." 5A N.J. Practice, Wills and Administration, § 459 at 463 (rev. 3d ed. 1982). See In re Estate of Cole, 200 N.J. Super. 396, 402-04, 404 n. 3, 491 A.2d 770 (Ch.Div. 1984) ("[m]uch of our [elective share] statute follows the Uniform Probate Code," but "our Legislature omitted one section of the Uniform Probate Code and radically altered another").
Interestingly, among the cases relied upon by the dissent to argue that "a statute is unconstitutional if it seeks to accomplish by an irrebuttable presumption what the legislature could not accomplish directly" is Howard Savings Institution v. Kielb, 38 N.J. 186, 199, 183 A.2d 401 (1962). The Supreme Court has observed, however, that the "true legislative intent, though couched in terms of [conclusive] presumption, is often to make a rule of substantive law and if the Legislature may constitutionally do the latter, the form of words will not defeat the intent." 38 N.J. at 199, 183 A.2d 401.
We note that the speculative constitutional concerns raised in the dissenting opinion were neither raised below nor on this appeal by any party. Hence, the issue is not really before us. Furthermore, there is no constitutional right to an elective share and it is solely a creature of statute. We note finally that surviving spouses are not a "suspect class" which are granted heightened constitutional protection, and the Legislature may freely make laws that have a rational basis, to further a government objective, which here, would be administrative convenience, costs and expenses of administration, and ease of administration.
[1] Case law interpreted statutes taxing gifts in contemplation of death to mean that a gift made within three years of death carries a rebuttable presumption that it was made in contemplation of death. This interpretation avoids the constitutional violations that would occur if the statute created an irrebuttable presumption of fact. See Estate of Ceppi, 698 F.2d 17 (1st Cir.), cert. denied, 462 U.S. 1120, 103 S.Ct. 3088, 77 L.Ed.2d 1350 (1983); Detroit Bank & Trust C. v. U.S., 467 F.2d 964 (6th Cir.1972), cert. denied, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973).